MERS, APPELLANT, *v.* DISPATCH PRINTING COMPANY ET AL., APPELLEES.

[Cite as Mers *v.* Dispatch Printing Co. (1985), 19 Ohio St. 3d 100.]

(No. 84-1682—Decided August 9, 1985.)

*Thomas M. Tyack & Assoc. Co., L.P.A.,* and *Mark A. Serrott,* for appellant.

*Jones, Day, Reavis & Pogue, Mark S. Coco* and *Gary D. Begeman,* for appellees.

CELEBREZZE, C.J. The ultimate issue before us is whether the trial court properly granted appellees' motion for summary judgment. Central to this determination is whether there were questions of fact concerning the existence of supplemental provisions to the oral employment agreement which would limit the Dispatch's discretion so that it could only terminate appellant's employment for good cause. Additionally, we must decide if promissory estoppel may ever constitute an exception to the doctrine of employment-at-will and, if so, whether there are disputed facts in this case relating to promises made by appellees which could afford appellant relief.

Appellant initially urges us to abolish the long-standing doctrine of employment-at-will.[1] Appellant contends the doctrine is no longer viable and argues for the establishment of a new rule whereby employees can only be discharged for just cause.

---

[1] The doctrine of employment-at-will was considered in *Henkel* v. *Educ. Research Council* (1976), 45 Ohio St. 2d 249 [74 O.O.2d 415], which stated at 255:

" 'Generally speaking, a contract for permanent employment, for life employment, or for other terms purporting permanent employment, where the employee furnishes no consideration additional to the services incident to the employment, amounts to an indefinite general hiring terminable at the will of either party, and a discharge without cause does not constitute a breach of such contract justifying recovery of damages. Annots. (1924), 35 A.L.R. 1432, (1941) 135 A.L.R. 646. The same is true where the contract of hiring specifies no term of duration but fixes compensation at a certain amount per day, week, or month. Annots. (1917), 11 A.L.R. 469, (1934) 100 A.L.R. 834. Although not absolute, the above stated rule appears to be in the nature of a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other. The presumption is grounded on a policy that it would otherwise be unreasonable for a man to bind himself permanently to a position, thus eliminating the possibility of later improving that position. Moreover, a contract of permanent employment is by its very nature indefinite, and thus any effort to interpret the duration of the contract and assess the amount of damages becomes difficult. * * *' "

Unless otherwise agreed, either party to an oral employment-at-will agreement may terminate the employment relationship for any reason which is not contrary to law. This doctrine has been repeatedly followed by most jurisdictions, including Ohio, which has long recognized the right of employers to discharge employees at will. See, *e.g.*, *LaFrance* v. *Internatl. Brotherhood* (1923), 108 Ohio St. 61; *Henkel* v. *Educ. Research Council* (1976), 45 Ohio St. 2d 249 [74 O.O.2d 415]; *Fawcett* v. *G. C. Murphy & Co.* (1976), 46 Ohio St. 2d 245 [75 O.O.2d 291]; *Evely* v. *Carlon Co.* (1983), 4 Ohio St. 3d 163.

This is not to say that employment-at-will agreements are without any defined limits. For example, Congress and the General Assembly have enacted laws forbidding retaliatory discharge for filing workers' compensation claims and for union activity, and discriminatory filings based on race, sex, age or physical handicap.[2] However, we are not persuaded that modern developments which have taken place in employment relationships constitute a sufficient basis for us to now totally abolish the employment-at-will doctrine. Such an action would, among other things, place Ohio's courts in the untenable position of having to second-guess the business judgments of employers. The need for certainty and continuity in the law requires us to stand by precedent and not disturb a settled point unless extraordinary circumstances require it.

While we believe that considerations of public policy do not demand total abandonment of the employment-at-will doctrine, this case demonstrates that there are occasions when exceptions to the general rule are recognized in the interest of justice. Accordingly, while we find it ill-advised to add a blanket "just cause" requirement to the employment-at-will doctrine, we find appellant's other contentions well-taken for the reasons to follow.

In *Henkel, supra,* this court stated that the "facts and circumstances" surrounding an at-will agreement should be considered to ascertain if they indicate what took place, the parties' intent, and the existence of implied or express contractual provisions which may alter the terms for discharge. Appellant alleges, *inter alia,* that oral representations were made which

---

[2] For example, R.C. 4112.02 provides that it is an "* * * unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of a person, to discharge without just cause * * *." Similarly, R.C. 4123.90 prohibits discharge of an "* * * employee because such employee filed a [workers' compensation] claim * * *." See, also, R.C. 4101.17; 4111.17(D); 4113.02; Section 703(a) of the Civil Rights Act of 1964, Section 2000(e)-2(a)(1), Title 42, U.S. Code; Section 4(a) of the Age Discrimination in Employment Act of 1967, Section 623(a)(1), Title 29, U.S. Code; Section 504 of the Rehabilitation Act of 1973, Section 794, Title 29, U.S. Code; Section 8(a)(3) of the National Labor Relations Act of 1935, Section 158(a)(3), Title 29, U.S. Code; Section 11(a) of the Occupational Health and Safety Act of 1970, Section 660(c), Title 29, U.S. Code; Section 312(a) of the Clean Air Act Amendment of 1977, Section 7622(a), Title 42, U.S. Code; and Section 510 of the Employment Retirement Income Security Act of 1974, Section 1140, Title 29, U.S. Code.

limited the Dispatch's right to discharge him. "[T]he character of the employment, custom, the course of dealing between the parties, or other fact which may throw light upon the question" can be considered by the jury in order to determine the parties' intent. *Bascom* v. *Shillito* (1882), 37 Ohio St. 431, 434. Employee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence of the employment contract. *E.g., Hedrick* v. *Center for Comprehensive Alcoholism Treatment* (1982), 7 Ohio App. 3d 211; *Helle* v. *Landmark, Inc.* (1984), 15 Ohio App. 3d 1.

*A priori,* the facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge. In this regard, we believe there was a genuine issue concerning the components of the facts and circumstances surrounding this employment agreement.[3]

An additional limit on an employer's right to discharge occurs where representations or promises have been made to the employee which fall within the doctrine of promissory estoppel. The Restatement of the Law 2d, Contracts, as quoted by this court in *Talley* v. *Teamsters Local No. 377* (1976), 48 Ohio St. 2d 142, 146 [2 O.O.3d 297], provides the rule of law that: " '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. * * *' "

In this vein, appellant contends that he relied to his detriment on the Dispatch's promise that he would be reinstated with back pay if the criminal charges were "favorably resolved." Appellant argues that there existed a factual issue as to whether the state's dismissal of the charges constituted a favorable resolution. If so, appellant asserts that he should be able to enforce the Dispatch's promise.

The trial court herein incorrectly concluded that promissory estoppel cannot be used to limit a contract which is otherwise terminable at will. (See *Hedrick* and *Helle, supra,* which correctly recognize promissory estoppel as a viable exception to rebut a presumption that the employment was at-will.) Although the appellate court herein retreats from the trial court's holding by recognizing promissory estoppel as a possible exception, it concludes the appropriate test involves the promisor's subjective interpretation of the promise. In other words, the promisor's construction of

---

[3] In the instant case appellant sought to demonstrate that he had relied on an employment manual and oral assurances from the Dispatch's agents at the time of his hiring that he could not be terminated unless he failed to perform his work satisfactorily or for some just cause.

what it meant by making the promise was found to be controlling. The court of appeals erroneously concluded it was not unreasonable for the Dispatch to interpret its "favorable resolution" promise to mean a jury acquittal. In our view, the employer's representation is to be determined by what the "promisor should reasonably expect" the *employee* to believe the promise means if expected action or forbearance results. Consequently, we find that the meaning of the Dispatch's promise, and whether the acts flowing from it were reasonable, are questions of fact for jury determination.

We therefore hold that where appropriate, the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise.

The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.

Lastly, we are called upon to determine whether the parties to an oral employment-at-will agreement must act in good faith. In *Fawcett, supra,* we are presented with a challenge whereby the discharged employee contended that the right " 'to terminate employment at will for any cause, at any time whatever, is not absolute, but limited by principles which protect persons from gross or reckless disregard of their rights and interests, wilful, wanton or malicious acts or acts done intentionally, with insult, or in bad faith.' " *Id.* at 249. This court, in a unanimous decision, rejected these contentions and refused to allow recovery of civil damages for employment discharge. Thus, we failed to recognize an exception for malicious acts or a duty on the parties to act in good faith.

Having come full circle in our discussion of the at-will employment doctrine, we now arrive at the essential question of whether the trial court improperly sustained appellees' motion for summary judgment.

Civ. R. 56(C) provides in part:

"* * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Whether appellees made representations which altered the terms of appellant's at-will employment contract, whether appellant relied upon subsequent promises to his detriment, and the applicability of the doctrine of promissory estoppel are but some of the issues which should have been resolved by a trier of fact. As we have said before, "[s]ummary judgment

is not appropriate where the facts, which must be viewed in a light most favorable to the party opposing the motion, *Williams* v. *First United Church of Christ* (1974), 37 Ohio St. 2d 150 [66 O.O.2d 311], are subject to reasonable dispute. Civ. R. 56(C)." *Jackson* v. *Kings Island* (1979), 58 Ohio St. 2d 357, 360 [12 O.O.3d 321]. We are unable to say that reasonable minds could reach but one conclusion as to these matters and potential corresponding liability in damages. Thus, we find that the ultimate resolution of these matters must be decided at trial.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

SWEENEY, LOCHER, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

HOLMES, J., dissents.

DOUGLAS, J., concurring. I applaud the majority herein for joining the rapidly growing number of jurisdictions that are making inroads into the area of wrongful discharge, especially in light of the prior reluctance of this court to make such a venture. See, *e.g., Henkel* v. *Educ. Research Council* (1976), 45 Ohio St. 2d 249 [74 O.O.2d 415]; *Fawcett* v. *G. C. Murphy & Co.* (1976), 46 Ohio St. 2d 245 [75 O.O.2d 291]. I am pleased to see the majority of this court moving away from slavish adherence to the principles enunciated in *Fawcett, supra,* which case on its face is unfair, toward a recognition that there are and should be exceptions to the antiquated and discredited employment-at-will doctrine. It is indeed interesting to note that even the dissent implicitly acknowledges a contract exception to the employment-at-will doctrine, given the proper set of facts.

In recognizing today that promissory estoppel is an exception to the at-will doctrine, the majority has taken a courageous *first* step. I trust that this court will now be receptive to considering other challenges to the employment-at-will doctrine, as have a multitude of other enlightened jurisdictions, based on public-policy considerations, contract principles, and/or tort theories, where unfair and unjust violations of the employment relationship have occurred.

HOLMES, J., dissenting. I hereby dissent from the majority opinion because the trial court quite correctly granted summary judgment. Also, the court of appeals should be affirmed in its analysis of the applicable law.

As the court of appeals rightly found, there was no genuine issue of fact whether appellant was an employee-at-will of the Dispatch. The law of Ohio is well documented in support of the principle that employment is

presumed to be at-will unless other contractual provisions expressly or impliedly provide otherwise. *Henkel* v. *Educ. Research Council* (1976), 45 Ohio St. 2d 249 [74 O.O.2d 415]; *Fawcett* v. *G. C. Murphy & Co.* (1976), 46 Ohio St. 2d 245 [75 O.O.2d 291]; *Evely* v. *Carlon Co.* (1983), 4 Ohio St. 3d 163.

The courts below properly determined that the grievance procedures in the employee handbook are non-mandatory policy guidelines not intended to bind the employer. The handbook neither requires the Dispatch to take any procedural steps, nor are there terms which limit the ability to terminate an employee. Further, "[a]ny decision by the general manager [is] regarded as final and binding." Thus, the employee handbook lacked the specificity necessary to give rise to a contractual obligation.

The court of appeals also correctly resolved the question of whether promissory estoppel altered the employment-at-will status of appellant. Appellant might well have asserted any number of absurd interpretations of the term "favorable resolution" depending on the outcome of his trial. What is absolutely clear is that the Dispatch needed a "clean bill of health" for appellant due to the sensitive nature of his work. Appellant was certainly aware of this. Unfortunately for appellant, the events at, and subsequent to, the trial have left certain unanswered questions concerning him despite the prosecutor's decision not to re-try the case. As a matter of law and common sense, this was not the kind of "favorable resolution" which could put the Dispatch at ease. Consequently, the decision to terminate appellant's employment was reasonable and made in good faith.