A motion for a directed verdict does not present a question of fact or raise factual issues, but instead presents a question of law, eventhough in deciding such a motion it is necessary to review and consider the evidence. Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St. 2d 66, paragraph one of the syllabus. In the instant case the question presented to the trial court on the appellees' motion for directed verdict was a legal one — did the evidence show the existence of a contract between the AMHA and appellees sufficient to overcome the employment at-will doctrine? I would hold that it did and affirm the judgment.
In order for an employee to overcome the employment-at-will doctrine through the use of an employee manual or handbook he must be able to prove:
"(1) A promise to employ for a particular period of time or to terminate only for certain reasons or certain procedures;
"(2) The enforceability of the promise because consideration was givenor through a doctrine that avoids the requirement of consideration;
"(3) The breach of a promise, and
"(4) The enforceability of the contract not with-standing the statute of frauds. Perritt, Employee Dismissal Law and Practice (1984) 121 (Citing Corbin, Corbin on Contracts (1952), 937, Section 958)" (emphasis added).
Reasonable minds could not differ as to whether appellees satisfied the four elements above. First, a handbook or employee manual containing a promise of an employer to limit his power to fire at-will is sufficient to satisfy element one. There were two documents involved in the instant case. The 1977 Manual stated in pertinent part that:
"No employee shall be discharged without just cause." Plaintiffs' Exh. #1, Art. IX.
The 1977 Manual was in effect at the time appellees were hired. Each testified that he received a copy of the manual with oral assurances of continued employment in return for expected performance. Each testified that he left a previous job in reliance on these assurances. The 1981 Manual was drafted in part by appellees, with substantial input from them. Friedman testified that he used other organizations' policy manuals, such as the University of Akron, in putting together the manual. The appellees testified that the goal in drafting the 1981 Manual was to come up with a better definition of "just cause". The pertinent subsection of the manual recites:
"Termination may occur for a very serious misconduct, or repeated instances of misconduct. Termination notice must be issued by a Personnel Officer. Such notice shall state the cause for termination." Plaintiffs' Exh. #2, p. 16.
The 1981 Manual was in effect at the time the appellees were terminated. Its provisions for progressive disciplinary procedures were not followed. Appellees testified that they interpreted these provisions as a continuation of the promise of AMHA to terminate only for just cause. The 1981 Manual recited in pertinent part:
"When the performance or behavior is deemed severe, or when there are numerous instances of a less severe nature, one or more of the following steps may be taken.
"Probationary Status — A regular employee may be placed upon probationary status of not less than thirty (30) days, nor more than ninety (90) days. Such action must be taken by a Personnel Officer. Theaction is to be thoroughly documented, as to cause, duration, and expected behavior. Interim evaluation is to occur during the time of probationary status. At the expiration of the time of the probationary status, contingent upon employee performance, the employee may be removed from probationary status: NOTE: Probationary Status is not to be confused with the Probationary Period of a new employee.
"Suspension — Suspension may result from serious misconduct, or repeated instances of non-conformance to the AMHA rules and regulations. Suspension may be issued by a Personnel Officer; it would usually follow a conference between the Division Administrator and a Personnel Officer.
"An employee is to be given written notification of the cause for andduration of the suspension.
"Termination — Termination may occur for a very serious misconduct, orrepeated instance of misconduct. Termination notice must be issued by a Personnel Officer. Such notice shall state the cause for termination.Id. (Emphasis added.)
This provision could reasonably be found to constitute a limitation on the employer's right to terminate at will. The trial court found this to be true "irrespective of any finding based on public policy." In other words, the trial court found this manual to be a promise enforceable at law. Combined with the oral representations made to plaintiffs with respect to job security, the trial court could reasonably have found that this promise was meant to induce detrimental reliance on behalf of plaintiffs. This is consistent with the Supreme Court's holding in Mers
v. Dispatch Printing Co. (1985), 19 Ohio St. 3d 100, and with the majority of other jurisdictions.[1] The trial court did not usurp the function of the jury in finding that there was a contract.
Second, the plaintiffs proved that they were induced into leaving their original jobs by the promise in the 1977 Manual that they would be discharged only for just cause This constitutes consideration from the appellees in return for the promise of AMHA, above and beyond the performance [BAD TEXT] ordinary job duties. After the 1981 Manual was adopted, the AMHA received the benefits of continued loyalty, performance, good morale, and the refusal of offers for other employment.Jones v. East Center for Community Mental Health, Inc. (1984),19 Ohio App. 3d 19. The benefits of the 1981 Manual were intended to induce the employees to forego organizing, to promote labor peace and to insure the stability of the entire work force.
Third, the AMHA breached its promise. The important point here is that the trial court did not even have to reach the issue of whether plaintiffs were fired without just cause. Here, the AMHA through the 1981 Manual promised that Plaintiffs would not be dismissed until certainprocedures were followed. The first question in regard to the breach is not, therefore, whether plaintiffs were justifiably terminated, but whether the procedures were followed. The record is indisputable; Janet Purnell [BAD TEXT] each plaintiff without observing the disciplinary procedures. Reasonable minds could come to no other conclusion.
Finally, plaintiffs easily overcame the statute of frauds. Generally, an oral contract for a specific term longer than one year violates the statute. However, an oral contract for an indefinite term is held not to violate the statute because it might be performed fully within a one-year period. 51 Ohio Jurisprudence 3d (1980) 245, Frauds Statute of, Section 95. Any of plaintiffs' contracts could have been performed in one year. Specifically, the events permitting their termination — the existence of cause for dismissal or exhaustion of pre-discharge procedures — could have occurred in one year.
A review of the personnel policy manuals, the pleadings, the testimony, and all other relevant evidence support the trial court's conclusion in denying the defendant's motions for a directed verdict. The court reaffirmed that conclusion by granting the plaintiffs' motion for a directed verdict on the liability question. This is because the plaintiffs satisfied their burden of proof with respect to the four elements previously mentioned: (1) A promise to terminate only in accordance with certain procedures; (2) the enforceability of that promise through the giving of adequate consideration; (3) the breach of that promise; and (4) overcoming the statute of frauds.
In Vinyard v. King, (C.A. 10, 1984), 728 F. 2d 428, the director of volunteer services of a public hospital was fired for alleged violation of a policy concerning confidentiality of personnel communications. She was given no hearing prior to discharge. At the time she was hired, there was no formal employees' policy manual. However, four years after commencement of her employment, she was given a copy of the hospital's employee handbook. The handbook included a non-exclusive list of twenty-three specific causes for discharge. The court construed this list as a promise that employees would be discharged only for cause.
The court then turned to the law of Oklahoma to determine whether the handbook constituted a contract that created a sufficient expectancy of continued employment to constitute a property interest, which must be afforded constitutionally guaranteed due process. Under Oklahoma law, the employee's consideration for the employer's promise could consist merely in continuing to work and foregoing the option of quitting. This was sufficient to create a property interest in the job subject to constitutional protection.
The facts in Vinyard are substantially similar to those of the instant case. Not only did the AMHA adopt the 1981 Manual limiting its power to fire at will while appellees were employees, the AMHA had given the 1977 Manual to each appellee when soliciting his employment. In addition, the 1981 Manual provided for disciplinary procedures, the hand-book inVinyard did not. Once the trial court determined that the 1981 Manual overcame the employment-at-will doctrine and constituted an implied promise of continued employment, it determined that the appellees had property rights in their jobs. See also, Whitfield v. Finn (C.A. 11, 1984), 731 F. 2d 1506.
The trial court in this case was justified in disposing of a highly complex legal issue by way of directed verdict. There was no error in this action requiring reversal.
The majority opinion states that:
"The trial court did not consider the evidence bearing on the issues of contract formation — promise, consideration (detriment or forebearance), etc." Id. at 9.
Further that:
"[T]he trial court must make every effort not to invade the province of the jury. The determination as to whether the parties had entered into an employment contract involved many facts, the judging of the credibility of the witnesses, and the weighing of evidence constituting the component parts making up the agreement. These are the traditional functions of the trier of fact. Accordingly, we find assignment of error two well taken."Id. at 10.
My reading of assignment of error two states that the trial court erred in directing a verdict for plaintiff on all issues of liability. This was done after a full trial and presentation of all the evidence from both parties.
I agree with the majority in their finding that Purnell and Fela are shielded by the doctrine of qualified immunity, in that the law at the time was in a state of flux, and they should not be charged with knowingly violating the employees' legal rights which were not then clearly established.
I dissent with the majority's opinion in assignment of error five. The trial court did submit to the jury interrogatories which were requested by the defendant. Others were excluded because they were not in the proper form, directed to issues that had been ruled on by the court, or had been withdrawn by the plaintiff.
I dissent with the finding of the majority in assignment of error nine. The majority is of the opinion that under Lewis v. Benson (1980),60 Ohio St. 2d 66, AMHA is creature of the State of Ohio and therefore cannot be held liable for prejudgment interest. The Lewis case was decided in 1980. R.C. 1343.03 was revised and became effective in July of 1982. Under this law, the state may be immune in judgment is rendered against the state in the court of claims, or in an action under Chapter 4123 of the Revised Code, the Worker's Compensation Act.
[1] Arizona, Arkansis, Colorado, Kansas, Maine, Maryland, Michigan, Nebraska, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Virginia and Washington. (Citations omitted). See 1985 Employment-At-Will Reporter, 2001.