**John A. KRAMER, Plaintiff,**

v.

**MEDICAL GRAPHICS CORP., Defendant.**

No. C87–2220.

United States District Court, N.D. Ohio, E.D.

Feb. 9, 1989.

R. Jeffrey Pollack, Burke Haber & Berick, Cleveland, Ohio, for plaintiff.

Wayne G. Faris, Oppenheimer, Wolff & Donnelly, St. Paul, Minn., and Miles W. Lord, Seiben, Gross & Von Holtum, Minneapolis, Minn., for defendant.

ORDER

BATTISTI, Chief Judge.

This action arises from the hiring and discharge of Plaintiff by the Defendant, Medical Graphics Corp. ("MGC"). Prior to joining MGC, Plaintiff had worked in the field of computer medical diagnosis at the Cleveland Clinic. On December 20, 1984 Plaintiff signed an employment agreement ("Agreement") with MGC. Before signing the Agreement, Plaintiff had entered into discussions with MGC President Stephen Anderson, in Minnesota. Plaintiff was to become a sales representative in the Cleve-

land area. Pursuant to the Agreement, Plaintiff commenced work in early January, 1989. Then on April 26, 1989 Plaintiff was given notice to "withdraw from sales" with two weeks severance pay or, alternatively, "MGC would try to find something for him in St. Paul." Plaintiff challenges his discharge in four Counts. MGC has moved for summary judgment.

*Count I*

██ In the first Count Plaintiff asserts that, during the meeting in Minnesota, representatives from MGC gave oral assurances and promises of a long term employment commitment. Because Plaintiff allegedly relied upon those representations to his detriment, he claims that MGC should be "estopped from terminating [him] and disavowing its long term commitment of employment to him." Plaintiff's basis for this claim rests on the theory of promissory estoppel. The use of this doctrine to limit an employment-at-will contract has recently been deemed appropriate by the Ohio Supreme Court. In *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985), the Court held that,

> [a]n additional limit on an employer's right to discharge occurs where representations or promises have been made to the employee which fall within the doctrine of promissory estoppel.... We therefore hold that where appropriate, the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements....

*Id.* at 104, 105, 483 N.E.2d 150. Plaintiff thus alleges that the long-term commitment became a binding condition of his employment. Whether such promises were made by MGC and whether Plaintiff reasonably relied upon such assurances is a question of fact inappropriate for summary disposition.[1] Defendant's Motion is thus denied as to Count I.

*Counts II and III*

The next two Counts are founded upon an alleged breach of contract. Plaintiff asserts that certain policies and procedures outlined in Defendant's "Employee Handbook" constitute binding, contractual conditions of employment. Specifically, Plaintiff states that MGC is required to follow a multi-step grievance procedure (Count II) and to deal fairly and in good faith with employees (Count III). Both are stated policies found in the Employee Handbook.

██ While "[e]mployee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence of the employment contract," *Mers,* 19 Ohio St.3d at 104, 483 N.E.2d 150, "the courts of Ohio have generally taken the position that company manuals and handbooks, alone, are insufficient to create implied contracts of employment to which the employer is legally bound." *Cicconetti v. Human Resources Center,* C.A. No. 2158, 1986 WL 10581 (9th Dist. slip op. Sept. 24, 1986). Many other Ohio courts would agree.[2] Plaintiff presents no facts or circumstances which would support a conclusion that MGC's Employee Handbook comprises evidence of his employment contract. In fact, the evidence reflects just the opposite. First, the Employee Handbook contains a disclaimer which reads:

---

1. It is not without reservation that the Court makes this ruling. It is difficult to imagine that a company would agree to hire and compensate a salesperson under a long-term commitment if that employee was unable to generate even one sale, as in this case. Furthermore, "in the absence of facts and circumstances which indicate that the agreement is for a specific term, an employment contract which provides for an annual rate of compensation, but makes no provision as to duration of the employment ... is terminable at will by either party." *Henkel v. Educational Research Council,* 45 Ohio St.2d 249, 251, 344 N.E.2d 118 (1976); *Hedrick v. Center for Comprehensive Alcoholism Treat-*

*ment,* 7 Ohio App.3d 211, 454 N.E.2d 1343 (1982).

2. *See, Rachubka v. St. Thomas Hospital,* C.A. No. 11596, 1984 WL 3982 (9th Dist. slip op. Oct. 10, 1984); *Parsons v. Denny's Restaurants,* C.A. No. 2608, 1988 WL 139542 (5th Dist. unreported op. Dec. 9, 1988); *Hoops v. United Telephone Co. of Ohio,* C.A. No. 87–62, 1988 WL 88773 (6th Dist. unreported op. Aug. 26, 1988); *Faykosh v. The Jewish Community Center of Toledo,* C.A. No. 87, 335, 1988 WL 86967 (6th Dist. unreported op. Aug. 19, 1988); and, *White v. Wright Tool Co.,* C.A. No. 12991, 1987 WL 17920 (9th Dist. slip op. Sept. 23, 1987).

SPECIAL NOTICE TO ALL EMPLOY-EES

This handbook has been designed to explain to all employees the current prevailing practices regarding benefits, workrules, and other practices of MGC. This handbook is not intended to serve as a contract and the policies and benefits described herein are subject to change at the sole discretion of the Company.

While this notice would seem to dispel all suspicions that the Employee Handbook is intended as part of the employment contract, Plaintiff opines that the disclaimer is "ineffective." Primarily, he contends that since the disclaimer was located on the last page, "it was not likely to capture [his] attention." However, Plaintiff would also have the Court uphold, as binding obligations, all of the other statements in the Employee Handbook, wherever located. Given Ohio's underlying reluctance to view handbooks as contractual obligations, Plaintiff's arguments are not persuasive.

■ Furthermore, Plaintiff's argument regarding the multi-step grievance procedure is severely undercut by the last sentence in that section of the Employee Handbook (which plaintiff did not even mention): "Although the Company wishes to help employees when they are experiencing performance problems, the Company reserves the right to terminate employees at its discretion." Such language can only be interpreted as a reaffirmation that MGC employees are hired on an employment-at-will basis. Therefore, Defendant's Motion for Summary Judgment is granted as to Counts II and III of the Complaint.

*Count IV*

■ In this final Count, Plaintiff alleges that he is owed a commission for the one sale which he initiated. The written contract entered into between the two parties provides clear standards for the payment of commissions. It states:

(7) *Commission:* Commission will be accrued as follows:

(a) One half of the commission dollars earned according to the following schedule will become payable upon *receipt*

*and approval by Medical Graphics of a legal purchase order.*

(b) The second half of the commission dollars earned according to the following schedule will become payable upon receipt of payment from customer by Medical Graphics.... (emphasis added)

Apparently, Plaintiff made initial sales calls upon a client named Pulmonary Dynamics, Inc. On the day he was told to "withdraw from sales," Plaintiff had called in an order for that client in the amount of approximately $73,000.00. MGC refused to pay a commission, claiming that Plaintiff had been terminated before he had any right to a commission under the employment contract (above). However, Plaintiff asserts that his employment status was unclear at the time, and he was not officially terminated until on or about May 16, 1985. Admittedly, the ultimatum delivered to Plaintiff on April 26, 1985 that he withdraw from sales, or in the alternative the company would find another position for him, is not an unequivocal statement of termination. It is not clear, at this juncture, whether a "legal purchase order" had been "received and approved" prior to Plaintiff's official termination. Therefore, defendant's Motion must be denied as to Count IV of the Complaint.

IT IS SO ORDERED.