CHASKO, Appellant,

v.

ELLWOOD ENGINEERED CASTINGS COMPANY, Appellee.

[Cite as *Chasko v. Ellwood Engineered Castings Co.* (1996), 110 Ohio App.3d 784.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 95–T–5324.

Decided May 6, 1996.

*James L. Messenger* and *Richard N. Selby,* for appellant.

*Timothy J. Jacob,* for appellee.

FORD, Presiding Judge.

Appellant, Phillip M. Chasko, appeals from a judgment of the Trumbull County Court of Common Pleas which granted appellee, Ellwood Engineered Castings Company, summary judgment.

The dispute in this case arose when appellee, a manufacturer of cast metal ingot molds in Hubbard, terminated the employment of appellant on March 24, 1993. From a review of the record, it appears that appellant was called to attend a meeting with Donald Hartuk, appellee's president; Joe Simko, company vice president; and Lyda Force, company human resource facilitator. The stated purpose of this meeting was intervention for deficient job performance and a poor

attitude. Appellant had worked for appellee beginning on December 4, 1991, in a number of capacities. The facility was organized in a "self-directed team" concept which emphasized team discipline. Apparently, appellant was perceived as a troubled worker, and management attempted to intervene and asked appellant to commit to trying to work within appellee's team approach.

At the first scheduled meeting with appellant, which was held on March 22, 1993, the suggested problems were discussed, but no resolution was reached. A follow-up meeting was scheduled for the next day, which appellant failed to attend. The second meeting was rescheduled for March 24 during working hours. When appellant entered the meeting room at the designated time, he placed a tape recording device on the table and proceeded to activate its recording function. Hartuk, who was presiding over the meeting, asked appellant to deactivate the recorder, stating that recording was not allowed. Appellant refused. Appellant was then asked by Hartuk two more times to turn off the recorder, requests which appellant also refused to honor. The meeting was immediately adjourned.

After appellant left the meeting, the decision was finalized to dismiss appellant from his position with appellee. Appellant was escorted from the premises on March 24, 1993, and was informed that his services would no longer be required. When appellant asked why he was being terminated, he was told "insubordination" in refusing to remove the tape recorder after a direct command from the company president to do so.

On November 4, 1993, appellant commenced the present action alleging wrongful termination due to promissory estoppel, fraud and intentional infliction of emotional distress. Following discovery, appellee filed a motion for summary judgment, which the trial court granted on August 8, 1995. Appellant now appeals, raising the following as error:

"1. The trial court erred in granting [appellee's] motion for summary judgment with respect to [appellant's] promissory estoppel claim.

"2. The trial court erred in granting [appellee's] motion for summary judgment with respect to [appellant's] fraud claim."

Initially, we must determine what effect the recent Supreme Court of Ohio decision in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, has on the disposition of this case. The *Dresher* decision is the most recent Supreme Court pronouncement regarding the mechanics of Civ.R. 56 summary judgment motions. The court appears to have modified its holding in *Wing v. Anchor Media Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, and established that:

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.* The 'portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case." (Emphasis *sic.*) *Dresher* at 296, 662 N.E.2d at 276.

■ Accordingly, appellee was required in its summary judgment motion to establish with specific references to the record that it was entitled to summary judgment as a matter of law. A review of the motion shows that appellee did extensively refer to the record to demonstrate that no genuine issues of material fact remained to be litigated. Accordingly, appellee satisfied the procedural requirements which were created by the *Dresher* decision.

As appellant's assignments are interrelated, they will be addressed concurrently. Appellant contends that appellee was not entitled to summary judgment as a matter of law on his promissory estoppel and fraud counts because he claims that a copy of disciplinary procedures was posted in the break room of appellee's plant. Appellant argues that since these procedures were not followed to appellant's detriment, a prima facie case of promissory estoppel has been presented. Appellant believes that this failure also established a prima facie case of fraud because the promise was clear and was likely to induce reliance, even though appellee had no intention of following those guidelines.

■ Appellant refers us to the existence of a disciplinary procedure which would have required two steps, (1) a verbal warning and (2) a written warning, before the third step could be initiated, which included the ultimate sanction of termination. Appellant contends that this posting created a justifiable reliance that he would be afforded verbal and written warnings before he could be terminated, and that failure to follow these procedures after promising to do so amounts to fraud. Appellant's contentions are without merit.

A review of the materials presented in this case demonstrates that a paper which was posted on a bulletin board contained a portion of a proposed disciplinary procedure. This procedure was apparently a draft of the disciplinary policy that was ultimately embraced in similar form in the employee "team member" handbook. This handbook was put into full force and effect in October 1993, several months after appellant was discharged. Additionally, it was never confirmed that the posted statement was ever submitted or published by appellee independent of the broader policies found in the handbook. This complete handbook had been handed out to company employees in draft form prior to appellant's termination.

Appellant admitted in deposition testimony that he was aware that the posted proposed disciplinary guidelines were a part of the broader handbook, which he also admitted to possessing and reviewing. Appellant testified:

"[Q.] Paragraph [thirteen] of the complaint * * * says, 'Said guidelines are a part of the defendant company policy manual distributed to all employees.' Do you agree that that's [sic] what that says?

"[A.] Yes.

"[Q.] Was a policy manual distributed to you?

"[A.] Yes, it was.

" * * * *

"[Q.] * * * Could you identify Exhibit B for us, please?

" * * * *

"[A.] It's more or less the guidelines to my place of previous employment.

"[Q.] Okay. Now, is Exhibit B the company policy manual that you were referring to in Paragraph 13 of your complaint?

"[A.] Yes.

" * * * *

"[Q.] Okay. Was Exhibit B also posted; is that your testimony?

"[A.] Yes.

"[Q.] Where was it posted?

"[A.] Near the break area, there was a bulletin board outside where the vending machines were.

"[Q.] Okay. Do you know who posted it?

"[A.] No, I do not.

" * * * *

"[A.] * * * It was just that [the guidelines were] a three-step procedure. If something was done wrong, it would be brought to my attention, and then I'd be properly warned.

"[Q.] And where did you get that information?

"[A.] Out of the handbook."

Appellant now contends that the guidelines which served to form his detrimental reliance were not the ones found in the handbook. Instead, he states that he relied upon the partial ones which were posted on the bulletin board in the break area. Appellant admitted that he was aware that the guidelines were a part of

the employee handbook, and uncontroverted testimony ·was provided which demonstrated that the posting was not done by appellee's management. It was shown that company postings were normally made on company letterhead and were signed by an official authorized to do so. The posted copy was not so endorsed. The handbook, which appellant possessed, contained the following disclaimers:

"THE PROCEDURES, BENEFITS, AND POLICIES SET FORTH IN THE MANUAL ARE NOT A BINDING EMPLOYMENT CONTRACT, BUT OF-FER A SET OF GUIDELINES. [The guidelines] DO NOT * * * IMPOSE ANY OBLIGATION ON [appellee] OR CONFER ANY RIGHT TO EMPLOY-MENT. * * *

"EVERY TEAM MEMBER HAS AN AT–WILL RELATIONSHIP WITH [appellee]. ALL TEAM MEMBERS ARE FREE TO RESIGN OR LEAVE EMPLOYMENT AT ANY TIME FOR ANY OR NO REASON. LIKEWISE, [appellee] IS FREE TO DISCONTINUE EMPLOYMENT AT ANY TIME FOR ANY REASON OR NO REASON, AND WITH OR WITHOUT NOTICE. * * *"

Furthermore, appellant was required to sign a disclaimer on his employment application which stated:

"It is recognized that this is not an employment contract, and I understand and agree that, if I am hired by [appellee], my continued employment with the company shall be at the will of the company and may be terminated at any time by either party."

When considering a motion for summary judgment, Civ.R. 56(C) states:

" * * * Summary judgment shall be rendered forthwith if the pleading, deposi-tions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[,] * * * [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in his favor."

In this case, appellant was terminated for alleged insubordination. He claims that guidelines contained in the company handbook, which was not yet in effect, and a posted copy of the those guidelines, created justifiable reliance that he could not be terminated unless he received verbal and written warnings. Howev-er, appellant never established *in any way* that the posted partial guidelines were ever considered company policy independent of the handbook. Indeed, the posted copy was clearly an excerpt from a more lengthy document, as demon-strated by the fact that a copy was continued on another page which was not

posted.[1] Appellant admitted that he knew that the "corrective action guidelines" were part of the employee handbook, and it is undisputed that the handbook, although distributed to all employees, was not in effect at the time appellant was terminated. These facts, coupled with the fact that the posted copy was incomplete and was not on company letterhead as any official company posting would have been, demonstrate that appellant could only have relied on the guidelines in the handbook which contained the express disclaimers. The trial court did not err when it determined that appellant had not created a genuine issue of material fact regarding a promise which could have been reasonably relied upon by appellant.

Appellant was presented ample opportunity in the proceedings below to demonstrate in some way that appellee had fostered his reliance by failing to follow company policy. This was not done. Had appellant shown that appellee had established a policy which mandated that certain disciplinary measures be followed prior to termination and appellee had not followed that policy, then a genuine issue of material fact would have been created, and the result in the summary judgment exercise would have been different.

The standard used in the determination of whether an employee should be classified as an at-will employee was set forth in *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150. The *Mers* court stated that "[u]nless otherwise agreed, either party to an oral employment-at-will employment agreement may terminate the employment relationship for any reason which is not contrary to law." *Id.* at paragraph one of the syllabus. The *Mers* decision also stated that "[t]he test [in promissory estoppel claims] is whether the employer should have reasonably expected its representation to be relied upon * * *." *Id.* at paragraph three of the syllabus; see, also, *DeCavitch v. Thomas Steel Strip Corp.* (1990), 66 Ohio App.3d 568, 585 N.E.2d 879.

Applied to the facts in this case, it is clear that appellant was an at-will employee who was subject to termination at any time. Appellant did not contend that he was not an at-will employee, he simply argued that his employment relationship was altered when the guidelines created his reliance. However, even when viewing the evidence in a light most favorable to appellant, appellant has not created a genuine issue of material fact regarding the existence of a promise from appellee that he could have justifiably relied upon. In fact, the evidence demonstrated quite clearly that appellant was aware that he was considered an at-will employee, that he knew that the employee handbook was the source of the

---

1. The posting appellant claims he relied upon concluded, "[T]he team leader should request a meeting with the," and had no second page. As was previously noted, this posting was not on company letterhead and was not signed by any member of management.

corrective action guidelines, and that a mere portion of those guidelines had been placed by someone on a bulletin board in the break area. Accordingly, the trial court did not err when it found that reasonable minds could only come to the conclusion that no promise was made by appellee which could have reasonably induced appellant's reliance. See *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 333, 587 N.E.2d 825, 831.

Similarly, in order to sustain a claim of fraud, appellant was required to demonstrate a misrepresentation made by appellee. See *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus. Just as appellant has also failed to demonstrate a promise made by appellee for his promissory estoppel claim, appellant failed to establish a misrepresentation. The policy which he claims gave rise to his fraud claim contained the foregoing disclaimers and, in fact, was not yet in effect. Construing the evidence in a light most favorable to appellant, it is clear that he was an at-will employee who was terminated lawfully. The trial court did not err when it granted summary judgment to appellee.

For the foregoing reasons, appellant's assignments of error are overruled. The decision of the Trumbull County Court of Common Pleas is affirmed.

*Judgment affirmed.*

CHRISTLEY and NADER, JJ., concur.