OPINION
{¶ 1} Plaintiff, Roosevelt Walker, III, M.D., appeals from a summary judgment for Defendant, University Medical Services Association, Inc. ("UMSA"), on Walker's claims for relief alleging promissory estoppel and breach of contract. The claims arise from UMSA's failure to provide Walker employment it had promised and/or which was the subject of a written employment contract. We find no error in the trial court's decision, and accordingly will affirm the summary judgment for UMSA.
 {¶ 2} Walker is a physician who specializes in obstetrics and gynecology. He was employed at Mercy Franciscan Hospital in Cincinnati in 2001, when he responded to an advertisement for employment placed in professional journals by UMSA. The position was one in a clinical practice plan that UMSA operates on behalf of Wright State University School of Medicine.
 {¶ 3} Walker was interviewed for the position in May and again in July of 2001. William W. Hurd, M.D. chairman of Wright State's department of obstetrics and gynecology, made an oral promise of employment on July 16, 2001, at the conclusion of Walker's last interview. Based on Hurd's promise, Walker submitted a letter of resignation from his employment by Mercy Franciscan Hospital dated July 31, 2001, effective thirty days later. Walker later testified that he would not have resigned but for Hurd's assurances of employment (p. 42), but that he also understood that the terms and conditions of his employment would be determined by a written employment contract. (P. 39).
 {¶ 4} Walker received a letter from UMSA dated July 23, 2001, which began with the words, "Welcome to UMSA," and sought information related to credentialing for purposes of third party reimbursement. Walker made no mention of the letter in his deposition, saying only that he resigned his position in reliance on Hurd's oral promises.
 {¶ 5} Subsequent to his resignation, Walker received separate letters dated August 3, 2001, from Wright State (Exhibit 5) and UMSA (Exhibit 4), setting out the duties and responsibilities of his employment and the compensation he would be paid. He also received a six-page Employment Agreement with UMSA (Exhibit 9). On August 11, 2001, after reviewing these documents with his attorney, Walker signed each of them where indicated to show his acceptance of their terms and returned them to Wright State and UMSA. The Employment Agreement was subsequently accepted and signed on behalf of UMSA by Hurd.
 {¶ 6} Walker was scheduled to begin work in his new position on September 17, 2001. However, on September 7, UMSA's medical malpractice liability insurer declined to extend coverage to Walker. Hurd directed Walker to apply to another carrier, but UMSA subsequently decided that the cost of that alternative was prohibitive. On October 9, 2001, UMSA terminated its employment agreement with Walker.
 {¶ 7} Walker commenced the action against UMSA underlying this appeal on January 16, 2003, pleading claims for breach of contract and promissory estoppel. After responsive pleadings were filed, UMSA moved for summary judgment. The trial court granted the motion on August 27, 2003. Walker filed a timely notice of appeal.
 {¶ 8} Plaintiff-Appellant Walker presents two assignments of error on appeal, one concerning his claim for breach of contract and the other his claim for promissory estoppel. As to each, he makes the same argument: that genuine issues of material fact remain for determination. Therefore, according to Walker, the trial court failed to apply the standards imposed by Civ.R. 56, and its summary judgment must be reversed.
 {¶ 9} Civ.R. 56(C) provides that upon the motion of a party, "[s]ummary judgment shall be rendered forthwith if (the record) show(s) that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." We find little, if any, factual issues presented on the record before us. The real question is whether, on those facts, UMSA is entitled to judgment as a matter of law on Walker's claims for relief.
 {¶ 10} The origin of this dispute is a provision of the written Employment Agreement that Walker signed on August 11, 2001. Paragraph 9 states:
 {¶ 11} "Termination of Employment. Physician's employment by UMSA shall terminate upon the happening of any one of the following events:
 {¶ 12} "(e) Immediately upon the Physician's loss of, or inability of UMSA to acquire, professional liability insurance from UMSA's then current professional liability insurance carrier."
 {¶ 13} It is undisputed that UMSA's insurance carrier declined to extend coverage to Walker. He argues that his termination was nevertheless barred by the doctrine of promissory estoppel, and was likewise a breach of the Employment Agreement.
 {¶ 14} Promissory estoppel is an equitable doctrine. It applies when no contract has yet been formed, but a promise is made which the promisor reasonably should expect to induce action or forbearance on the part of the promisee, and which does induce such action or forbearance. Mers v. Dispatch Printing Co.
(1985), 19 Ohio St.3d 100. The promise will be held to be binding if injustice can be avoided only by its performance. Id. If the promise is not then performed, the promisee is entitled to specific performance and/or damages.
 {¶ 15} Walker resigned from his position with his prior employer on July 31, 2001, in reliance on the oral promise of employment made to him by Hurd at their meeting on July 16. Walker now also relies on the letters he received from UMSA and Wright State dated August 3, 2001. He argues that because in none of those communications was the requirement for medical malpractice coverage stipulated, or even mentioned, UMSA should not be allowed to enforce the condition in the written Employment Agreement that caused his termination.
 {¶ 16} Walker received the letters dated August 3, 2001, from UMSA and Wright State after he had resigned from his position by letter dated July 31, 2001. The Wright State and UMSA letters therefore could not have been an inducement for his resignation. And, Walker testified that he relied only on Hurd's oral promise of employment when he resigned. (T. 42).
 {¶ 17} UMSA denies that the conversation between Walker and Hurd and the letters Walker received amounted to a promise of employment, or at least one that either party is unable to repudiate "at will." However, and even accepting Walker's argument that a promise of employment was made on which Walker relied when he resigned his prior position, summary judgment is warranted on the record before us.
 {¶ 18} Ohio is an employment-at-will state where employers are free to discharge at-will employees at any time for any reason not contrary to law. Mers. "Although an implied contract or promissory estoppel may take a case out of the employment at will doctrine, . . . this does not hold true where there is an unambiguous written contract to the contrary." Lane v. TerminalFreight Handling Co. (S.D. Ohio, 1991), 775 F. Supp. 1101, 1105. Further, "in the absence of a `specific promise of continued employment,' a promise of future benefits or opportunities does not support a promissory estoppel exception to the employment-at-will doctrine." Vennekotter v. Ohio TurbineCenter, Inc., (Jan.18, 2001), Putnam App. No. 12-2000-12, 2001-Ohio-2130 at p. 8.
 {¶ 19} In Mers, an at-will employee who was terminated asserted breach of contract and promissory estoppel claims, based on the employer's oral representations that he would be reinstated if criminal charges that were the cause of his termination were "favorably resolved." Those charges were subsequently dismissed when the complaining witness declined to prosecute. The employer nevertheless declined to reinstate the plaintiff, saying that in its view a favorable resolution meant acquittal.
 {¶ 20} It is unclear from Mers what the employee did or failed to do in reliance on the employer's promise that operated to the employee's detriment for promissory estoppel to apply. The Supreme Court's principal concern was the test for what the promisor should expect its promise to induce on the part of the promisee. The court held that the proper test was not the promisor's subjective belief, but rather an objective test, what a person making the promise reasonably should believe.
 {¶ 21} On this record, and applying the standards that Civ.R. 56 prescribes, whether UMSA should reasonably have expected Hurd's oral promise to induce Walker to quit his employment may be a jury question, as issues of reasonableness typically are. However, Walker's claim in that regard is undermined by his subsequent conduct.
 {¶ 22} The oral promise on which Walker claims he relied to his detriment contained no specific promise of Walker's continued employment by UMSA. Further, and unlike Mers, the subject of the promise was governed by the terms of the subsequent written Employment Agreement into which Walker freely and voluntarily entered. The unambiguous conditions of that agreement are controlling of any contrary oral promises, affirmative or by negative implication, concerning the same matters that either party made prior to executing the Employment Agreement. No further, specific agreement to modify or discharge UMSA's alleged prior promise was required. The doctrine of "novation" imposes that requirement where a prior contract exists, but by its terms promissory estoppel applies only when no prior contract exists. Therefore, because UMSA was relieved by the subsequent written agreement of the obligations its prior oral promise had imposed on it, Walker's promissory estoppel claim cannot lie.
 {¶ 23} In support of his breach of contract claim, Walker argues that UMSA's subsequent effort to obtain coverage for him from another carrier after its own carrier had declined coverage operates to void or modify the requirement in the Employment Agreement that Walker must be covered by UMSA's then current carrier.
 {¶ 24} Efforts of a party inconsistent with rights conferred on that party by a prior written agreement, like subsequent oral representations to the contrary, cannot modify or void terms to which the parties have agreed in writing so as to deprive the party of the benefits of the rights conferred. Therefore, UMSA's efforts to obtain other coverage for Walker cannot deprive UMSA of the right of termination conferred on it by the Employment Agreement so as to make Walker's termination a breach of the parties' contract of employment.
 {¶ 25} The assignments of error are overruled. The judgment of the trial court will be affirmed.
Brogan, J. and Wolff, J., concur.