Sharon MUMAW, Plaintiff,

v.

DOLLAR GENERAL CORPORATION,
Defendant.

No. C–1–95–1075.

United States District Court,
S.D. Ohio,
Western Division.

Jan. 5, 1998.

Randolph Harry Freking, Freking & Betz, Cincinnati, OH, for Plaintiff.

Ronald Gordon Linville, Baker & Hostetler, Columbus, OH, for Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR MIXED MOTIVES DESIGNATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DLOTT, District Judge.

This matter is before the Court on Plaintiff's Motion for Mixed Motives Designation (doc. # 22) and Defendant's Motion for Summary Judgment (doc. # 16). For the reasons more fully stated below, Plaintiff's Motion is hereby **DENIED** and Defendant's Motion is hereby **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Sharon Mumaw has brought this action against Defendant Dollar General Corporation ("Dollar General") arising out of the termination of her employment by Dollar General. Specifically, Plaintiff alleges age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the Ohio Revised Code §§ 4112.02(A), (N) and 4112.99, sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and the Ohio Revised Code §§ 4112.02(A) and 4112.99, and common law claims of breach of contract and promissory estoppel.

Plaintiff began her employment with Dollar General in April 1988 as a part time retail clerk at its store in Lawrenceburg, Indiana. In October 1989, Plaintiff was promoted to part time head clerk, and in March 1990, was promoted once again to manager of Dollar General's store in Harrison, Ohio.

In February 1989, Plaintiff received a copy of Dollar General's employee handbook (the "Handbook"), which detailed Dollar General's employment policies and procedures. Included in the Handbook are at least two references to the fact that employment with Dollar General is employment at will that either the employee or the employer is free to terminate at any time. The Handbook also states that the terms contained in it are informational, not contractual, in nature. Another passage, describing Dollar General's disciplinary procedures, states that "[t]he Company's basic approach is to help employees identify and correct deficiencies. However the Company does not guarantee continued employment to any employee and specifically reserves the right to terminate any employee when it is in the best interest of the Company."

When Plaintiff received a copy of this Handbook, Plaintiff signed a form acknowledging her receipt of it that urged employees to read the Handbook carefully, stated that its terms could be revised by Dollar General at any time, and contained the following disclaimer:

**THE HANDBOOK IS NOT INTENDED TO BE CONTRACTUAL IN NATURE NOR TO FORM THE BASIS FOR AN EXPRESS OR IMPLIED EMPLOYMENT CONTRACT AND SHOULD NOT BE RELIED UPON AS SUCH. IT IS THE POLICY AND INTENT OF DOLLAR GENERAL CORPORATION THAT THE EMPLOYMENT RELATIONSHIP IS ONE CREATED AND GOVERNED BY THE WILL OF BOTH PARTIES, AND MAY BE TERMINATED WITH OR WITHOUT CAUSE BY EITHER PARTY.** (Emphasis in original).

As a store manager, Plaintiff's responsibilities included ensuring that store employees properly recorded the time they worked on time sheets, approving these time sheets, and submitting them to the payroll department so that paychecks could be issued to those

employees. The Handbook stresses that employees are to sign in and out for the exact times they worked. The Handbook also contains two separate references to Dollar General's policy prohibiting an employee from signing a time sheet on behalf of another employee and that violation of this prohibition could lead to immediate termination of employment. In December 1990, Plaintiff acknowledged receipt of Dollar General's "Company Policy Regarding Hourly Employee Time Sheets" which stated in part that "failure to record *ACTUAL HOURS WORKED* on the employee's time record will result in termination of employment for the employee who falsifies the time record as well as for the management employee who instructs the employee to falsify the time record." (Emphasis in original). A similar memorandum, instructing that time sheets must reflect all actual hours worked and any employee who falsifies a time record would be terminated, was given to Plaintiff in January 1995. Plaintiff's supervisor, Deborah Colvard, stressed the importance of adherence to this policy to Plaintiff and other store managers in a meeting that same month.

The previous month, on December 16, 1994, Plaintiff received from Colvard a written warning, referred to as Plaintiff's "final counseling," for her employees' failure to sign in and out on the time sheets as Dollar General's policy required. The warning told Plaintiff that she must follow Dollar General's procedures with regard to the time sheets "100% of the time" without exception and ensure that her employees do so as well.

Plaintiff has admitted to not always recording the hours claimed by employees to have been worked when approving and submitting time sheets signed by the employees as part of her duties as store manager. At times, Plaintiff entered employees' time sheets into the payroll system with less hours than they had claimed on their time sheets to have worked. However, Plaintiff contends that employees would report to work earlier than they were scheduled to begin working and though the employees would sign in, they would not begin working until their scheduled time. Plaintiff claims to have never received any training or guidance from

her supervisors as to whether or not this time before scheduled hours was compensable and so she did not pay her employees for time that Plaintiff claims employees spent waiting prior to a scheduled shift. Plaintiff notes that in reviews of her performance as a store manager by her district manager conducted in March 1992, March 1994, and February 1995, her performance was rated as "meets standards."

In early June 1995, Plaintiff's district manager, Gary Moore, reviewed Plaintiff's payroll records to ensure compliance with the company's time sheet policy. There is a dispute as to the extent of an investigation that Moore conducted into alleged employee complaints regarding Plaintiff's approval and submission of employee time sheets. Moore contends that three employees complained to him that they were not paid for all of the hours for which they had entered on their time sheets as having worked. Plaintiff has submitted an affidavit from one of those employees stating that Moore never asked her if she was not paid for hours she claimed to have worked. It is apparently undisputed that Moore spoke with two other employees and subsequently inspected the payroll records for Plaintiff's employees. Moore met with Plaintiff on June 13, 1995 to discuss the findings of this audit of the payroll records.

In this meeting, Moore told Plaintiff that she had not been paying her employees for all of the time they had claimed to have worked. As a result, Moore informed Plaintiff that she was immediately discharged from her employment. Plaintiff was 52 years old at the time of her termination. She was replaced by Darlene Ulm, who was 42 years old at that time.

## II. PLAINTIFF'S MOTION FOR MIXED MOTIVES DESIGNATION

In order to establish a prima facie case of discrimination, a plaintiff typically must prove that she was a member of a protected class, that she was terminated, that she was qualified for her position, and that she was replaced by a person outside the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Mitchell v. Toledo Hos-*

*pital,* 964 F.2d 577, 582 (6th Cir.1992). Once a plaintiff has established a prima facie case of discrimination by a preponderance of the evidence, the defendant must articulate some legitimate, nondiscriminatory reason for the employee's termination. If the defendant carries this burden of production, then the plaintiff must prove by a preponderance of the evidence that the reason offered is not the defendant's true reason, but merely a pretext for discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This *McDonnell Douglas/ Burdine* framework is equally applicable to claims of sex discrimination under Title VII, claims of age discrimination under the ADEA, and claims of discrimination under Ohio state law. *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir.1992). *See also Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Commission,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981) ("[F]ederal case law interpreting Title VII ... is generally applicable to cases involving alleged violations of R.C. Chapter 4112.").

■ However, the *McDonnell Douglas/ Burdine* test and its burden shifting are inapplicable in discrimination cases where "the plaintiff presents direct evidence of discrimination." *Blalock v. Metals Trades, Inc.,* 775 F.2d 703, 707 (6th Cir.1985) (citations and internal quotations omitted). If a plaintiff shows by direct evidence that discrimination played a motivating part in an employment decision, a defendant may avoid liability for age discrimination and may limit a plaintiff's relief for sex discrimination only by proving that it would have reached the same employment decision without the discriminatory influence under another motive. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–245, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); 42 U.S.C. §§ 2000e–2(m), 2000e–5(g)(2)(B)(i).

Plaintiff moves the Court to adopt this "mixed motives" analytic framework in this case. However, Plaintiff has presented no direct evidence of age or sex discrimination to this Court. At most, Plaintiff has presented circumstantial evidence in support of her allegations, rather than evidence that directly shows her termination was at least in part because of impermissible discriminatory animus. Therefore, application of the mixed motives analysis to Plaintiff's claims of sex and age discrimination would be inappropriate; Plaintiff instead will be expected to establish the prima facie case of discrimination for these claims as set forth in *McDonnell Douglas, Burdine,* and their progeny.

Accordingly, Plaintiff's Motion for Mixed Motives Designation is hereby **DENIED.**

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A. Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Summary judgment is not appropriate if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

#### B. Analysis

##### 1. Sex Discrimination

■ Plaintiff alleges that Defendant willfully discriminated against her in terminating

her employment and thus treated her differently than similarly situated male employees because of her sex, in violation of Title VII and Sections 4112.02(A) and 4112.99 of the Ohio Revised Code. Defendant moves this Court for summary judgment on these claims because Plaintiff cannot establish a prima facie case of sex discrimination or that Defendant's stated reason for discharge is pretextual.

As detailed above, a prima facie case of sex discrimination may be established by showing that a plaintiff was a member of a protected class, she was terminated, she was qualified for her position, and she was replaced by a person outside the protected class. While it is undisputed that, as a woman, Plaintiff is a member of a protected class and that she was terminated, Defendant contends that Plaintiff was neither qualified for her position nor replaced by a person outside the protected class.

■ In order to show that she was qualified for her position, Plaintiff must prove that she was performing her job at a level which met her employer's legitimate expectations. *Ang v. Procter & Gamble*, 932 F.2d 540, 548 (6th Cir.1991). Defendant asserts that Plaintiff cannot fulfill this requirement because her recording of only the hours her employees were scheduled to work rather those that the employees entered on their time sheets fails to meet Defendant's legitimate expectations of its employees. In response, Plaintiff contends that her qualifications for the position are evidenced by her performance as a manager for five years prior to her termination and several performance reviews that gave her a rating of "meets standards." Furthermore, on June 13, 1995, the day Plaintiff was fired, Moore rated Plaintiff's store as meeting Dollar General's standards in an audit of the store.

While there exists evidence to show that Plaintiff was not qualified for this position, this Court cannot conclude that Plaintiff was not qualified as a matter of law. Viewing the facts in the light most favorable to the non-moving party, Plaintiff cannot be said to have failed to meet the employer's legitimate expectations. Summary judgment based upon Plaintiff's failure to satisfy this prong of the prima facie case is improper.

Nonetheless, Plaintiff cannot satisfy the final requirement of the prima facie case. This requirement can be met by showing that she was replaced by a person outside the protected class or that a comparable non-protected person was treated better. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992) (internal citations omitted). The fact that Plaintiff was replaced as store manager of the Harrison, Ohio Dollar General Store by Darlene Ulm, a woman and therefore a member of Plaintiff's protected class, is undisputed. Consequently, Plaintiff attempts to show that comparable non-protected persons were treated better by asserting that Moore, a district manager for Dollar General, was not terminated despite his failure to conduct a payroll audit during each store visit and that Milton Henderson, another Dollar General store manager, was paid substantially more than Plaintiff.

However, in order to satisfy this last requirement of the prima facie case, a Plaintiff must show that she and the non-protected persons alleged to have been treated better "are similarly situated *in all respects*" and have "dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* at 583 (emphasis in original). Plaintiff has failed to do so. Moore was Plaintiff's supervisor; his employment situation cannot be said to be "nearly identical" to Plaintiff's and is therefore not similarly situated in all respects for purposes of establishing disparate treatment. *Pierce v. Commonwealth Life Insurance Co.*, 40 F.3d 796, 802 (6th Cir. 1994) (internal quotes and citations omitted). As for Henderson, it has not been shown that Plaintiff and he engaged in the same conduct. In addition, Henderson had previously served as a district manager and a store manager at four different stores, and such differentiating circumstances could explain Defendant's treatment of him. He cannot be found to be similarly situated to Plaintiff in all respects. For these reasons, Plaintiff has

failed to establish this necessary prong of the prima facie case of sex discrimination. Due to this failure to establish a prima facie case, the Court finds it unnecessary to examine whether the Defendant's stated reason for discharge is pretextual with regard to this claim.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claims of sex discrimination is hereby **GRANTED.**

### 2. Age Discrimination

Plaintiff also alleges that Defendant willfully discriminated against her in terminating her employment and thus treated her differently than similarly situated younger employees because of her age, in violation of the ADEA and Section 4112.02(A) and (N) of the Ohio Revised Code. Defendant moves this Court for summary judgment on these claims because Plaintiff cannot establish a prima facie case of age discrimination or that Defendant's stated reason for discharge is pretextual.

As previously stated, the prima facie case of age discrimination is similar to that of sex discrimination. Plaintiff may make such a showing by demonstrating that she is between the ages of 40 and 70, and therefore a member of a protected class, she was subject to an adverse employment action, she was qualified for the position, and she was replaced by a younger person. *Simpson v. Midland–Ross Corp. .,* 823 F.2d 937, 940 (6th Cir.1987). It is undisputed that Plaintiff is a member of the protected class and that she was subjected to an adverse employment action. It is also undisputed that Plaintiff was replaced by someone younger than her. Defendant, however, contends that Plaintiff was not qualified for her position for the same reasons detailed above in the Court's analysis of Plaintiff's sex discrimination claims.

Once again, while there exists evidence to show that Plaintiff was not qualified for this position, this Court cannot conclude that Plaintiff was not qualified as a matter of law. Viewing the facts in the light most favorable to the nonmoving party, Plaintiff cannot be said to have failed to meet the employer's legitimate expectations. Summary judgment

based upon Plaintiff's failure to satisfy the prima facie case is improper.

Therefore, the Court must examine the Defendant's proffered reason for why Plaintiff was terminated. Defendant has asserted that Plaintiff was terminated based upon her failure to pay her employees for all the hours that they actually worked. This reason must be supported by admissible evidence. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In support of its contention, Defendant offers Plaintiff's own deposition testimony in which she acknowledged that she did not always record the hours that employees had claimed on their time sheets to have worked, but instead entered into her payroll records only those hours that the employees were scheduled to work. Defendant also offers undisputed evidence that shortly before her dismissal, Gary Moore informed Plaintiff that he believed there was a problem with her time sheets and that as a result, he would inspect them. Plaintiff has acknowledged that Moore informed her that as a result of this inspection, he believed that she was not paying her employees for time that they had worked. This evidence supports Defendant's proffered legitimate, nondiscriminatory reason for Plaintiff's discharge.

In response to a legitimate, non-discriminatory reason for Plaintiff's discharge offered by Defendant, Plaintiff has the burden of proving both that Defendant's reason was merely a pretext for discrimination and that Defendant's action was the product of unlawful discrimination. *Id.* at 514, 113 S.Ct. 2742. However, rejection of a defendant's proffered reason allows the trier of fact to infer the ultimate fact of intentional discrimination. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1083 (6th Cir. 1994). In order to show pretext, an employee can demonstrate "either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge." *Id.* at 1084 (internal quotes and citations omitted). Plaintiff asserts many bases upon which she claims that Defendant's proffered reason for termination can be found to be pretextual.

■ First, Plaintiff claims that Defendant has given different reasons for why Plaintiff was terminated and from this, a trier of fact may conclude that the reasons articulated are pretextual. Specifically, Plaintiff claims that Gary Moore testified in his deposition that Plaintiff was terminated in part because of the previous warning Plaintiff had received in December of 1994 for failure to follow company policy with regard to completion of employee time sheets, while Jeffrey Rice, Director of Human Resources for Defendant, testified that Plaintiff's termination was not based upon that previous warning. However, Moore clearly stated in his deposition that Plaintiff's failure to record the time that employees claimed to have worked was the offense for which Plaintiff was terminated, that he determined Plaintiff should be terminated for this offense before learning of the previous violation, and Moore offered the previous violation as a second reason for termination only when asked. Plaintiff's assertion fails to create a dispute of material fact. No reasonable juror could conclude on this basis that Defendant's proffered reason is pretextual and in fact its decision was based upon discriminatory animus.

■ Second, Plaintiff claims that a question of fact exists as to whether or not Defendant investigated the reasons behind Plaintiff's termination and asserts that an employer's failure to conduct a thorough investigation before deciding to terminate a plaintiff for a violation of rules is evidence of pretext. Plaintiff and Defendant dispute whether Moore spoke with Carolyn Sturgill, an employee of Defendant who reported to Plaintiff when Plaintiff was a store manager, regarding whether or not Sturgill had been paid for hours that she claimed to have worked. Moore claimed to have spoken with Sturgill and two other employees at the time, Tammy Abbot and Kathy Smith. Moore asserts that all three said that they had actually worked the hours that they had signed on their time sheets, hours that Moore felt were reported incorrectly by Plaintiff. Plaintiff has submitted an affidavit from Sturgill stating that Sturgill was never asked by Moore if she had worked hours for which she was not paid. Plaintiff submits a similar affidavit from another employee, Patricia Kimmon,

though based upon the evidence before it, the Court finds that Moore did not claim to have spoken with her. He only said in his deposition that he discovered through his audit of the payroll records that Kimmon, in addition to other employees, had not been paid for hours that she had claimed on her time sheet to have worked. Based on the record before the Court, it is undisputed that Moore spoke with Abbot and Smith. Moore claims that the employees spoke of working hours that they had recorded on their time sheets for which they were not paid. It is also undisputed that prior to Plaintiff's termination, Moore reviewed payroll records prepared by Plaintiff for the purpose of determining whether employees had not been paid for hours that they claimed on their time sheets to have worked. Furthermore, Plaintiff has admitted to the conduct that was investigated and served as the basis for Defendant's conclusion that Plaintiff did not pay her employees for hours actually worked; that is, not recording the hours that some employees reported on their time sheets but instead recording only the hours for which they were scheduled.

Plaintiff's complaints regarding the thoroughness of the investigation do not amount to a showing of pretext so as to withstand summary judgment. Plaintiff and Defendant do dispute whether Moore spoke with Sturgill with regard to whether she actually worked the hours that she recorded on her time sheets for which she was not paid. However, this dispute is not material in light of the undisputed facts that Moore did speak with two other employees and performed a review of payroll records prepared by Plaintiff in order to investigate discrepancies between the hours claimed by employees on their time sheets to have been worked and those hours reported by the Plaintiff. The burden is on the Plaintiff to present evidence of a discriminatory purpose "from which a reasonable jury could conclude that age was more likely the reason for [plaintiff's] discharge, rather than a mere speculative possibility." *Wilkins v. Eaton Corp.*, 790 F.2d 515, 523 (6th Cir.1986). Viewing all evidence in the light most favorable to Plaintiff, she has failed to show such evidence with regard

to Defendant's investigation of the offense for which she was terminated.

 Plaintiff also asserts that her younger replacement was paid $8.00 per hour, while Plaintiff received only $6.44 per hour when terminated. Plaintiff claims that "[t]his disparate treatment is evidence of age discrimination." This fact alone does not show that Defendant's proffered reason is pretextual and that Plaintiff was in fact terminated as a result of discriminatory animus. In order to show that a proffered reason is pretextual through disparate treatment, Plaintiff must show that she and her replacement were similarly situated in all relevant respects. *See Pierce v. Commonwealth Life Insurance Co.*, 40 F.3d 796, 805 (6th Cir. 1994). A plaintiff cannot withstand a motion for summary judgment without producing "sufficient affirmative evidence to establish that the . . . employees with whom she compares her treatment were similarly situated in all respects. . . ." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 584 (6th Cir.1992). Plaintiff has presented no facts whatsoever that she and her replacement were similarly situated in all respects and therefore a reasonable jury could not find Defendant's reason to be pretextual based upon this claim of disparate treatment.

Finally, Plaintiff argues that Defendant's proffered reason for Plaintiff's termination can be found to be pretextual because the reason is factually false. Defendant contends that Plaintiff was terminated for failing to pay employees for the hours they actually worked. Plaintiff responds that she did not violate company policy and only paid employees for the hours they actually worked. However, Plaintiff has admitted to the factual basis for Defendant's finding that Plaintiff violated company policy. She has admitted that she had at times only recorded the hours that her employees were scheduled to work, not the hours that the employees claimed on their time sheets to have actually worked. While Plaintiff may disagree with the conclusion made by Defendant based upon these facts, the factual basis for her termination is undisputed. Without any such dispute, a reasonable jury could not find that the basis for Plaintiff's termination is factual-

ly false and that the Defendant's proffered reason is pretextual. *See Id.* at 584–585 (plaintiff's denial of defendant's conclusion that undisputed actions constituted the offense for which she was terminated was insufficient to withstand motion for summary judgment).

In deciding whether a defendant's proffered reason for an adverse employment decision is pretextual, it is "the trial court's duty to review all of the facts together, not in isolation." *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1167 (6th Cir.1996). These allegations by Plaintiff when considered together, in the light most favorable to Plaintiff, do not raise genuine issues of material fact with regard to whether Defendant's proffered reason is a pretext for discriminatory intent and Defendant's decision to terminate Plaintiff was actually the product of unlawful discrimination. The evidence is not such that a reasonable jury could return a verdict for the Plaintiff.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claims of age discrimination is hereby **GRANTED.**

### 3. Breach of Contract

 Plaintiff also claims that her termination and Defendant's subsequent refusal to hear her appeal breached an implied contract with Plaintiff because Dollar General's Handbook advises that employees will receive progressive counseling for minor infractions of company policy or procedures, will not be dismissed for a first offense unless it is "extreme," and that Defendant will hear an employee's appeal of a termination decision. Plaintiff claims that Defendant terminated her without progressive counseling for an offense that was not extreme and did not hear an appeal of that decision.

Defendant responds that Plaintiff was an employee at will. Defendant further contends that no contract existed between the two parties, it never altered her status as an employee at will or the terms for discharge, and Plaintiff was aware of these facts by her acknowledgment that the Handbook was not a contract. As an employee at will, Defendant concludes, Plaintiff could be discharged

at any time, for any reason, or for no reason at all.

In general, the relationship between an employer and an employee is terminable by either party and an employee may be subject to discharge at any time, with or without cause. *See Henkel v. Educational Research Council of America*, 45 Ohio St.2d 249, 255, 344 N.E.2d 118 (1976). However, an exception to this employment at will doctrine is the creation of implied or express contractual provisions which alter the terms of discharge. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 104–105, 483 N.E.2d 150 (1985). In deciding if an issue of fact exists as to whether an implied contract has been created and the employment at will relationship altered, the Court may consider "information contained in employee handbooks, oral representations made by supervisory personnel that employees have been promised job security in exchange for good performance, and written assurances reflecting company policy." *Wright v. Honda of America Manufacturing, Inc.*, 73 Ohio St.3d 571, 574–575, 653 N.E.2d 381 (1995).

Plaintiff advances the theory that the practices set forth in the Handbook constituted an employment contract between Dollar General and Plaintiff and that the contract was breached by her termination for an offense that she claims was not extreme without progressive counseling or an appeal of Dollar General's decision. Defendant has stated that Plaintiff was terminated for her failure to record the time that employees worked. The evidence before the Court indicates that this is an offense for which Plaintiff had previously been told she could be terminated immediately. More importantly, however, the evidence before the Court does not show that Dollar General's Handbook was intended to or did in fact alter Plaintiff's employee at will status, creating contractual obligations between the parties.

The status of an employee at will is not altered to that of contract employee if an employee handbook specifically disclaims any intent to create a contractual relationship between an employer and an employee and an employee signs a receipt which further underscores that no such construction was intended. *Karnes v. Doctors Hospital*, 51 Ohio St.3d 139, 141, 555 N.E.2d 280 (1990). This finding is further supported when the employee does not view the handbook as a binding contract. *Id.*

The Handbook given to Plaintiff by Dollar General contained at least two separate references to the fact that the employment relationship was one of employment at will and one passage stating that the terms of the Handbook were intended to be informational, and not contractual, in nature. Plaintiff signed a form acknowledging her receipt of the Handbook that also had a prominent disclaimer stating that the Handbook was not intended to create the basis of an express or implied employment contract, and that either the employer or the employee is free to terminate the relationship at any time. Furthermore, Plaintiff unequivocally stated in her deposition that she did not view the Handbook at the time of her receipt of it or at any time during her employment with Dollar General as a contract between her and Defendant. Therefore, the Handbook cannot serve as the basis for a breach of contract claim.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claim of breach of contract is hereby **GRANTED**.

### 4. Promissory Estoppel

Last, Plaintiff seeks recovery from Defendant under a theory of promissory estoppel. Specifically, Plaintiff claims that Defendant's Handbook provides that employees will receive progressive counseling for minor infractions, employees will not be discharged for a first offense unless it is extreme, and that Defendant will hear an employee's appeal of a termination decision. Plaintiff further asserts that Defendant did not give her progressive counseling, terminated her for a first offense of an infraction that was not extreme, and Defendant refused to hear an appeal of her termination though Plaintiff relied upon these promises to her detriment by forgoing a job search.

The existence of promissory estoppel where representations or promises have been made to an employee is another

exception to the doctrine of employment at will. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 104–105, 483 N.E.2d 150 (1985). Promissory estoppel is applicable when "a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise." *Id.* at 105, 483 N.E.2d 150. Promissory estoppel can be established by demonstration of detrimental reliance on specific promises of job security. *Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St.3d 131, 136, 543 N.E.2d 1212 (1989). *See also Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 110–111, 570 N.E.2d 1095 (1991) ("a promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the well established doctrine of employment at will"). Any such promise must be clear and unambiguous. *Cohen & Co. v. Messina*, 24 Ohio App.3d 22, 26, 492 N.E.2d 867 (Cuyahoga Co.1985); *Healey v. Republic Powdered Metals, Inc.*, 85 Ohio App.3d 281, 284, 619 N.E.2d 1035 (Medina Co.1992).

Plaintiff has introduced no evidence of a specific promise of job security or continued employment and instead claims that she detrimentally relied upon Defendant's failure to follow disciplinary procedures established in the Handbook. Establishment in an employee handbook of a disciplinary procedure alone does not constitute a specific promise of job security or continued employment and failure to follow that procedure does not constitute a basis upon which a claim of promissory estoppel may succeed. *See Cully v. St. Augustine Manor*, 1995 WL 237129 at *11 (Ohio App. 8 Dist. April 20, 1995) (company's disciplinary policies are analogous to unenforceable promises of future benefits and do not amount to representations of job security); *Meeks v. Abitibi–Price Corp.*, 1994 WL 603082 at *5 (Ohio App. 6 Dist. Nov. 4, 1994) (language detailing disciplinary procedures is not a promise of job security). This is certainly true in this case where the Handbook details certain offenses for which immediate discharge is warranted and where language within the Handbook specifically stated that the policies contained therein did not constitute a contract between employer and employee and that its disciplinary procedure did not guarantee continued employment, reserving the right to terminate any employee when it is in the best interest of Defendant. *See Duncan v. Bellemar Parts Industries, Inc.*, 1991 WL 216782 at *3 (Ohio App. 3 Dist. September 12, 1991) (promissory estoppel not actionable when employer noted in handbook that immediate termination, not progressive discipline, would result for some offenses). Another passage specifically stated that the Handbook's terms are informational and not contractual in nature and the receipt signed by Plaintiff when she received the Handbook stated that these terms are subject to revision by Defendant at any time. Based upon the evidence before it, the Court concludes as a matter of law that a clear and unambiguous promise of job security or continued employment was not made to Plaintiff for which the Defendant should reasonably have expected action or forbearance by Plaintiff.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claim of promissory estoppel is hereby **GRANTED**.

## IV. CONCLUSION

For reasons set forth above, the Plaintiff's Motion for Mixed Motives Designation is hereby **DENIED**.

For reasons set forth above, the Defendant's Motion for Summary Judgment is hereby **GRANTED**.

**IT IS SO ORDERED.**