OPINION *Page 2 
{¶ 1} Appellant Vanessa Milhouse is appealing the decision of the Mahoning County Court of Common Pleas to grant summary judgment to Appellee Financial Healthcare Associates, Inc. ("FHA"). Appellant was employed by FHA to process workers' compensation claims for a hospital that was a client of FHA. Appellant was given passwords in order to be able to use her computer and to access hospital records. FHA asked Appellant to reveal her passwords and she did. However, when they asked again in order to update their records, she refused. Appellant argues that she properly withheld the passwords from Appellee in order to keep the hospital records confidential. She contends that there are numerous public policies against revealing confidential patient information. The record indicates that Appellant was merely an employee of FHA and had no independent reason for having access to patient records, for keeping the health records hidden, or, in fact, for having the computer passwords in the first place. Furthermore, the record indicates that she had already revealed the passwords to her employer once, and it was only upon a subsequent request that she refused to cooperate. The record further provides numerous reasons for Appellant's dismissal, only one of which was the refusal to cooperate in revealing her passwords to her employer. Appellant has provided no recognizable public policy that was violated by her dismissal. Therefore, the judgment of the trial court is correct and is hereby affirmed.
 FACTS AND PROCEDURAL HISTORY {¶ 2} Prior to being hired by FHA, Appellant had been employed as a billing clerk by St. Elizabeth Hospital. (Milhouse Depo., p. 10.) The parties refer to *Page 3 
Appellant's job as "industrial billing." Appellant was hired as an at-will employee by FHA in 2000 to process workers' compensation claims for St. Elizabeth Hospital, who was a client of FHA. FHA's employee policy manual specifies that employment was at-will.
 {¶ 3} When Appellant was first hired by FHA, she was given a password to sign on to her computer, and this computer gave her access to the hospital records needed to perform her job. (Milhouse Depo., pp. 20-22.) Appellant also had a password to enter the billing system, which gave her access to other hospital records. Appellant's computer and workspace were actually located within St. Elizabeth Hospital, which was the specific client utilizing FHA's billing services.
 {¶ 4} At some point Appellant's computer passwords changed, although Appellant did not know how or when they changed, or who changed them. (Milhouse Depo., p. 21.) Appellant gave these new passwords to FHA, her employer. (Milhouse Depo., p. 23.) One of the reasons FHA needed the computer passwords was that other FHA employees used Appellant's computer to help catch up with billing. (Milhouse Depo., p. 24.) Appellant was aware that other FHA employees used her computer to do billing work for the hospital. Appellant was aware of at least four other FHA billing clerks doing work that was similar to hers, and she knew of one other computer near hers that was used for the same purpose.
 {¶ 5} Appellant had no immediate on-site supervisors at the hospital. Appellant did have daily contact with hospital employees, including Debbie Savage, who shared office space with Appellant. Appellant knew Ms. Savage from her prior *Page 4 
employment at the hospital. Ms. Savage helped Appellant in her computer billing work with FHA, although she was not employed by FHA. Ms. Savage and other hospital personnel were aware that Appellant shared her computer and her computer passwords with other FHA employees, and no objections were raised about this procedure at the hospital.
 {¶ 6} St. Elizabeth Hospital was owned and operated by Humility of Mary Health Partners ("HMHP"). Jenny Durkin was the Director of Patient Financial Services for HMHP from 2001 until January of 2004. She was in charge of the services provided by FHA and had authority to terminate FHA as a vendor for HMHP services, including the service for which Appellant was employed. Ms. Durkin was also in charge of solving communication problems that had developed between HMHP and FHA. Ms. Durkin became aware that Appellant had a negative attitude toward FHA and made derogatory comments about FHA to HMHP employees. Ms. Durkin concluded that Appellant was hurting the relationship of the two companies, and she asked Brian Reese, who was president of FHA and Appellant's supervisor, to remove her from HMHP facilities. Mr. Reese was already aware that Appellant was not adequately doing her job, and that other employees had to be sent to St. Elizabeth Hospital to finish her work. Mr. Reese reassigned Appellant to St. Joseph Hospital (which is also a HMHP facility) and changed her job responsibilities. This move satisfied Ms. Durkin, and HMHP did not terminate its relationship with FHA.
 {¶ 7} At some point after Appellant moved to St. Joseph Hospital, she received an email from her supervisor asking for her passwords from her former *Page 5 
computers at St. Elizabeth Hospital because FHA was updating their computer system. Although Appellant had previously given her employer the current computer passwords, she refused to reveal her passwords to her supervisors at this time. The reason she refused was: "To my understanding they had already had a list of all of the employees' passwords and pass codes and I didn't understand why I needed to give them out if they already had that information." (Milhouse Depo., p. 28.) She understood that she was refusing a direct order from her supervisor to reveal the passwords.
 {¶ 8} Immediately after FHA asked Appellant to reveal her passwords, she talked to Patricia Lewis who worked in computer information services at the hospital. Patricia Lewis is not employed by FHA. The record indicates that Ms. Lewis had no supervisory role with regard to Appellant's employment. Ms. Lewis told Appellant that it was hospital policy not to reveal passwords and that FHA should contact the hospital directly. Appellant failed to consult with her own supervisors or any other person in authority at the hospital regarding this issue. Appellant simply refused to give her employer any information about her passwords after speaking with Ms. Lewis. The following section from Appellant's deposition illustrates this point:
 {¶ 9} "Q. And outside of asking a general question of this Patricia Lewis in the information office you didn't go to anyone at the hospital and say something to the effect of, I'm uncomfortable giving my password to FHA personnel, I'll be happy to give it to someone at the hospital, right, you never had that conversation.
 {¶ 10} "A. Correct." (Milhouse Depo., p. 37.) *Page 6 
 {¶ 11} On or about September 25, 2002, Brian Reese terminated Appellant's employment with FHA.
 {¶ 12} On October 8, 2003, Appellant filed her complaint, alleging wrongful discharge in violation of public policy. Her complaint included a variety of defendants, but the sole defendant remaining at the time this appeal was filed was Appellee. On September 12, 2005, Appellee filed a motion for summary judgment. Attached to the motion were affidavits of Jenny Durkin of HMHP and Brian Reese of FHA. A deposition of Appellant was taken on July 16, 2005, and filed with the court. Appellant filed a response to the motion on November 23, 2005. The trial court granted summary judgment to Appellee on December 1, 2005, and this timely appeal followed on December 30, 2005.
 ASSIGNMENT OF ERROR {¶ 13} "The trial court erred in granting summary judgment because the record contained evidence sufficient to create genuine issues of material fact regarding Plaintiff-Appellant's claim for discharge in violation of public policy."
 {¶ 14} Appellant is challenging the trial court's decision to grant summary judgment to Appellee. A trial court's ruling on a motion for summary judgment is reviewed de novo on appeal, using the same standards as the trial court as set forth in Civ.R. 56(C). Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from *Page 7 
the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,4 O.O.3d 466, 364 N.E.2d 267.
 {¶ 15} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party'sclaim." (Emphasis sic.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 296,662 N.E.2d 264. If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden to produce evidence on any issue for which that party bears the burden of proof at trial. Id. at 293, 662 N.E.2d 264.
 {¶ 16} It is undisputed that Appellant was an at-will employee in Appellee's business. In Ohio, an at-will employee may be terminated without the employer providing a reason, so long as the termination is not contrary to law. Mers v. Dispatch Printing Co. (1985),19 Ohio St.3d 100, 483 N.E.2d 150, paragraph one of the syllabus.
 {¶ 17} In Greeley v. Miami Valley Maintenance Contr, Inc. (1989),49 Ohio St.3d 228, 551 N.E.2d 981, the Ohio Supreme Court first recognized that there is an exception to the at-will employment doctrine when an employee is discharged or disciplined for a reason that violates the clear public policy of Ohio. To state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts *Page 8 
demonstrating that the employer's act of discharging her contravened a clear public policy. Painter v. Graley (1994), 70 Ohio St.3d 377, 383,639 N.E.2d 51.
 {¶ 18} There are four elements of a claim of wrongful discharge in violation of public policy:
 {¶ 19} "`1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
 {¶ 20} "`2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
 {¶ 21} "`3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 {¶ 22} "`4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).' (Emphasis sic)" Kulch v. Structural Fibers, Inc. (1997),78 Ohio St.3d 134, 151, 677 N.E.2d 308.
 {¶ 23} The first two elements are questions of law to be decided by the court, and the second two elements are questions of fact to be decided by the trier of fact. Collins v. Rizkana (1995),73 Ohio St.3d 65, 70, 652 N.E.2d 653.
 {¶ 24} Appellant cannot establish any of these elements. First, Appellant cannot establish a clear public policy governing the situation that actually occurred. The record reflects that HMHA hired FHA to do billing work; FHA already had access to the hospital patient records before Appellant began working for them; FHA had *Page 9 
other employees doing the same work on other computer terminals using other billing clerks in addition to Appellant; Appellant had already given her updated passwords to FHA, but for a variety of reasons, FHA wanted Appellant to confirm the information; and Appellant refused to cooperate with her employer by refusing to confirm her former passwords on a computer she no longer used. Appellant is basically arguing that there is a public policy against institutional processing of workers' compensation claims because the very act of processing those claims requires that billing personnel have access to patient records. There cannot be such a public policy against a hospital processing its workers' compensation claims, because there is a complete statutory scheme governing workers' compensation, including the reimbursement process. R.C. § 4123.01 et seq.; Ohio Adm. Code 4123-1-01 et seq. In order to process workers' compensation claims, the person doing the billing must have access to the appropriate information. HMHA hired FHA to supply workers like Appellant who would have access to that information and process the claims. If HMHA had a right to hire FHA to process reimbursement for its workers' compensation claims, then Appellant had no public policy reason to keep FHA, being both her employer and HMHA's agent, from gaining access to records that would enable FHA to do its job.
 {¶ 25} The types of authority that Appellant cites in her attempt to establish a clear public policy all deal with unauthorized access to medical records. Appellant argues that there is a public policy against the unauthorized release of confidential physician-client records to a third party, citing Biddle v. Warren Gen. Hosp. (1999), *Page 10 86 Ohio St.3d 395, 715 N.E.2d 518 and R.C. § 2317.02. She cites R.C. § 2913.04, which is a felony criminal statute concerning, inter alia, the unauthorized use of computers. R.C. § 2913.49 is a felony criminal statute dealing with the fraudulent use of personal information. Appellant even cites the federal Health Insurance Portability and Accountability Act of 1996, 42 U.S.C.S. § 1320d-1 et seq. It should be readily apparent, despite the aforementioned caselaw and statutory citations, that if HMHA hired FHA to process its workers' compensation claims, then FHA was authorized to have access to the records to the same extent that HMHA itself had access to the records. Appellant's claim that there is a public policy that somehow authorized Appellant to be a private gatekeeper of information and, thus, prevent her employer from doing its job is untenable.
 {¶ 26} Other statutes cited by Appellant are clearly inapplicable to the facts of this case. R.C. § 3701.243 deals with disclosing information about HIV tests, but this statute only governs persons or agencies of state or local government, and there is no allegation or evidence that state or local government entities were involved in Appellant's hiring or firing. R.C. § 3721.13 deals with the rights of residents of nursing homes, but no nursing home is alleged to be involved in the instant case. R.C. § 5123.62 deals with the rights of persons with mental retardation or a developmental disability. Again, there is no evidence that any such person's rights were violated or were about to be violated. R.C. § 3701.07 deals with information that hospitals are required to report to the Ohio Department of Health, which has nothing to do with Appellant's claim. R.C. § 3727.14 (which has been repealed and replaced by R.C. *Page 11 
§ 3727.36 dealt with two specific situations in which a person's Social Security Number would need to be excluded when a hospital submitted records to the Ohio Department of Health, and again, this has nothing to do with the issues in this appeal. R.C. § 3793.14 deals with patient confidentiality for certain patients being treated for drug and alcohol addiction, and there is no evidence suggesting that such patients were at risk of having their confidential information revealed to unauthorized persons.
 {¶ 27} Even if some public policy could be articulated that would have prohibited FHA from having access to HMHA's patient records, Appellant cannot establish the other three elements of wrongful discharge against policy. To prove the second element of the tort, Appellant would need to prove that her dismissal, under the same of similar circumstances, would jeopardize the public policy. This is not a factual issue, but a matter of law for this Court to decide. Collins, supra, 73 Ohio St.3d at 70,652 N.E.2d 653. If the public policy at stake is the preservation of the confidentiality of certain medical records, the circumstances of Appellant's firing have nothing to do with preserving confidentiality. It is without dispute that FHA had already been given Appellant's computer password and already had access to the hospital's records. Appellant's actions did nothing to protect a single person's records, and she acknowledged many times in her deposition that her refusal to give the computer password had nothing to do with preserving the confidentiality of records. She refused to give her password because she had already given it to her supervisors before and because she determined, on her own, that she did not need *Page 12 
to do it again. Since her dismissal does nothing to jeopardize any alleged public policy, Appellant's tort claim fails.
 {¶ 28} The third element of the tort is that the dismissal was motivated by conduct related to the public policy. Once again, there is no evidence in the record establishing that Appellant was fired because she was trying to preserve the confidentiality of patient records. Appellant never told her employer that this was her goal. Appellee's rationale for dismissing Appellant was that she jeopardized the business relationship between FHA and HMHP, and that is the only reason FHA gave to Appellant. (Milhouse Depo., p. 41.) Appellant assumed, though, that she, "was terminated because [she] refused to give out the passwords or pass codes." (Milhouse Depo., p. 28.) She did not provide any evidence that she was terminated for protecting patient records. This record reflects that Appellant's refusal to repeat her computer password information was clearly a form of insubordination. Since Appellant was an at-will employee, she could be fired for insubordination, or for no reason at all. Mers, supra, 19 Ohio St.3d 100, 19 OBR 261,483 N.E.2d 150, paragraph one of the syllabus.
 {¶ 29} The fourth element of the tort is that the employer lacked overriding legitimate business justification for the dismissal. Appellee set forth facts to show that Appellant was jeopardizing its contract with HMHP, which was Appellee's most important account. The affidavits of both Jenny Durkin and Brian Reese reveal that Appellant had been making public derogatory comments about FHA, was not completing her work, was having a negative effect on other employees, and was *Page 13 
jeopardizing the entire relationship between FHA and HMHP. Appellant provided nothing to dispute this evidence. Protecting one's largest corporate account would appear to be an overriding legitimate business justification. Without rebuttal evidence, it would appear that Appellant failed to meet her burden of proof on this element of her tort claim.
 {¶ 30} We must overrule Appellant's assignment of error and affirm the trial court's decision if she fails to establish any one of the elements of her claim of wrongful discharge in violation of public policy. It is evident that her vague claims about preserving patient confidentiality have nothing to do with the reasons for her termination. Even if it can be assumed that she was fired for the sole reason that she refused to reveal a computer password to her employer that they should already have in their possession, her firing does not endanger any public policy as a matter of law. Since the first two elements of the tort of wrongful discharge in violation of public policy are matters of law, and since Appellant's claim does not satisfy those two elements, any other factual disputes in this case are largely irrelevant and cannot form a basis for ruling in Appellant's favor. Appellant did not and cannot establish the elements of the tort of wrongful discharge in violation of public policy, and thus, the decision of the trial court to grant summary judgment to Appellee is affirmed.
 Vukovich, J., concurs. DeGenaro, P.J., concurs. *Page 1