Lisa M. **SCHREIBER**, et al., Plaintiffs,

v.

**STATE FARM INSURANCE COMPANY, Defendant.**

**No. 3:02cv127.**

United States District Court, S.D. Ohio, Western Division.

July 6, 2007.

William R. Miller, Thomas Botros Kolin & Schulte, Stephen D. Behnke, Donenfeld Botros Kollin, Dayton, OH, for Plaintiffs.

Gordon Dale Arnold, John Garland Witherspoon, Jr., Dayton, OH, for Defendant.

## DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 11)

RICE, District Judge.

This litigation involves a house with a leaky roof. Lisa M. Schreiber and Monika Pogue [1] ("Plaintiffs," collectively) purchased a house located at 3000 Coker Drive, in Kettering, Ohio, from Janice Maddux, in 2001. Allegedly, due to one or more hail storms in the months preceding Plaintiffs' purchase of the house, the roof sustained damage, resulting in water damage throughout various parts of the interior. Prior to the purchase date of the house, Defendant State Farm Insurance Co. ("State Farm" or "Defendant"), pursuant to a homeowners insurance policy held by Maddux, paid for some, but, as Plaintiffs allege, not all of the damage. Based on a promise allegedly made by a representative of State Farm to Plaintiff Schreiber's mother, Plaintiffs believe Defendant is liable for the remaining costs associated with the damage to the roof. Accordingly, Plaintiffs filed the current matter in the Common Pleas Court of Montgomery County, Ohio, alleging three claims, to wit: Breach of Contract (Count One), Fraud (Count Two) and Bad Faith (Count Three). Pursuant to 28 U.S.C. § 1446, Defendant filed a Notice of Removal (Doc. # 1) in this Court. State Farm is an Illinois corporation, with its principal place of business in Illinois. Plaintiffs are both residents of Ohio. Additionally, the amount in controversy exceeds $75,000.00. As such, jurisdiction in this Court is proper, pursuant to this Court's diversity jurisdiction, 28 U.S.C. §§ 1441 and 1332.

The matter is currently before the Court on Defendant's Motion for Summary Judgment (Doc. # 11). For the reasons assigned herein, Defendant's motion is overruled in its entirety.

## I. Standards Governing Motions for Summary Judgment

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the

---

1. There is some confusion as to the correct spelling of Pogue's first name. In their filings, the parties spell it "Monica." However, in the Docket caption in both this Court and the state court from which the matter was removed, it is spelled "Monika." Further, Ms. Pogue's own signature, found on documents submitted by the parties as exhibits in this matter, appears to spell it "Monika." Accordingly, the Court will utilize the latter spelling.

absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

■ Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341

(6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110

S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. Background

In late 1998, Janice Maddux purchased a house at 3000 Coker Drive, in Kettering, Ohio ("House"), and contemporaneously entered a homeowners contract of insurance with State Farm ("Insurance Contract"). On January 19, 2001, the Insurance Contract lapsed, due to nonpayment of premium by Maddux.

On April 9, 2001, a hail storm struck Kettering, Ohio ("First Hail Storm"), and caused extensive damage in the area. Subsequently, on April 26, 2001, Maddux hired Tim Bond as her real estate agent to sell the House. On May 21, 2001, Maddux completed an application for insurance to State Farm for a new Insurance Contract. The policy provided coverage for the period between May 21, 2001, and May 21, 2002.

On May 22, 2001, Dallas Covey prepared an estimate for Maddux to replace the roof of the House. On May 24, 2001, another hail storm ("Second Hail Storm") struck

Kettering. Following this Second Hail Storm, Maddux made a claim to State Farm for damage to the House.

Lisa Schreiber's mother, Janet Schreiber, was a long time friend of Maddux. On May 29, 2001, Plaintiffs went to look at the House. At that time, Maddux told them that it had been damaged by hail and that it would be "taken care of" by her insurance company (Pogue Depo. at 33). On May 31, 2001, Plaintiffs met with Bond and signed a Contract to Purchase Real Estate ("Purchase Contract").

■ However, Plaintiffs remained concerned about the damage to the House (and, specifically, to the roof) from the hail. During subsequent weeks, representatives of State Farm made various trips to the property for the purpose of assessing the damage to the House. On June 18, 2001, State Farm claim representative Jesse Jones inspected damage that had been done to the gutter screen, patio cover and some of the shingles. Thereafter, he issued a check to Maddux in the amount of $1954.42, an amount reflecting $2454.32 in damages to the House, minus a $500 deductible. On June 28, 2001, another State Farm claim representative, Jason Sulish, inspected the House in the presence of Lisa Schreiber, Pogue, Maddux, Janet Schreiber and Tim Bond. After inspecting the House again (including the roof), Sulish prepared another estimate to cover the cost of repairing the patio cover and of adding more shingles. State Farm then sent Maddux another check, in the amount of $1,142.25. Additionally, Lisa Schreiber was informed by her mother Janet that, at some point on June 28, Sulish indicated that if the roof were to leak any time in the next five years, State Farm would replace it (Lisa Schreiber Depo. at 167).[2]

---

2. The record contains some inconsistencies

and unfilled gaps as to whom Sulish allegedly

On August 11, 2001, Maddux permitted Plaintiffs to move into the House, even though the closing was not scheduled until August 23, 2001. On the night of August 11, a large rain storm occurred in Kettering, Ohio. The next morning, Plaintiffs awoke to find water in the House. Plaintiffs believed that the water leak was related to the hail damage from the prior storms, and contacted Maddux who, in turn, contacted State Farm. Maddux indicates that it was she who contacted State Farm, and not Janet Schreiber, because she was the insured of State Farm (Maddux Depo. at 76). On August 21, 2001, State Farm representative Sarah Kopittke inspected the House, and the next day, prepared an estimate of $702.44 to paint and deodorize the House for damage from rain storms. She sent Maddux a check for $202.44 (the estimate minus the deductible). However, Plaintiffs' concerns about the damage were still present.

Lisa Schreiber indicates that, as the closing drew near, she considered not going through with it because of concerns regarding the roof (Lisa Schreiber Depo. at 246–49). Plaintiffs did, however, go through with the closing. On the day of that event, Plaintiffs executed a "Reimbursement Agreement" with Maddux. That agreement contained the following provision:

> The parties herein agree that, Janice Maddux will remit to purchasers the total sum of any funds received from settlement with her insurance company, plus the amount of her deductible. If however, the average of the total sum of the aggregate estimates or the actual cost of repairs exceeds the settlement tendered to Janice Maddux by 15% or more then Janice Maddux [shall] reimburse purchasers for the total amount of the difference between the actual cost of average estimated costs and the amount tendered as settlement.

Doc. # 11, Ex. 13. All three parties to sign the agreement understood that Maddux would pay for any repairs to the roof not paid for by State Farm (Lisa Schreiber Depo. at 273; Pogue Depo. at 146–48; Maddux Depo. at 97). Further, Lisa Schreiber understood that the agreement did not assign to her any rights to sue State Farm (Schreiber Depo. at 273).[3]

---

made this statement, and whether he made the statement at all. Lisa Schreiber testified at her deposition that Sulish made the comment to her mother, Janet Schreiber. This fact is not verifiable, since no party has submitted a deposition of Janet Schreiber, although both refer to it in their respective memoranda. In Maddux's deposition, she indicates that she heard Sulish make the statement, but that "he didn't say it to [her] per se, but to Tim Bond" (Maddux Depo. at 84). Tim Bond, however, does not recall Sulish making the statement (Bond Depo. at 76). Defendant indicates that Pogue testified as to the alleged statement in her deposition (Doc. # 11 at 13, citing Pogue Depo. at 70–72), but approximately half of the numbered pages of Pogue's deposition are absent from the copy submitted to the Court, including pages 70–72. The reason for this is that, although it appears that the pages of the deposition were intended to be double-sided, only the front side of each page has text printed on it.

Finally, Sulish's statement appears to be admissible as evidence. Clearly, his statement to Janet Schreiber would be admissible as non-hearsay, as a statement of a party opponent's agent, pursuant to Federal Rule of Evidence 801(d)(2)(D). Furthermore, Janet Schreiber's statement to Lisa Schreiber that Sulish had made the promise is arguably not hearsay, in that it is being offered not for the truth of the matter asserted, but to show the source of Lisa Schreiber's alleged reasonable reliance.

3. According to Defendant, Pogue had the same understanding (Doc. # 11 at 8), but the page of her deposition for which it cites this proposition is missing from the copy submitted to the Court.

## III. Analysis

### A. *Breach of Contract*

Defendant advances two separate bases for summary judgment as to Plaintiffs' breach of contract claim, to wit: that the damage to the House was caused by the First Hail Storm (and not the second such), a time at which the Insurance Contract had lapsed; and that Plaintiffs have no standing under Maddux's policy of insurance to sue. The Court will address each in turn.

#### 1. *Cause of the Damage*

Defendants insist that no reasonable juror could conclude that the damage to the House occurred during or after the Second Hail Storm. Defendant believes that, if true, this entitles it to summary judgment because it means that the damage was caused by the First Hail Storm, which occurred at a time when the House was not insured (Doc. # 11 at 10). Defendant's argument fails, however, because it erroneously assumes that Plaintiffs could prevail only by proving that they possess rights under Maddux's Insurance Contract. For reasons explained *infra*, Sulish's statement was sufficient to generate an inference of promissory estoppel, as well as an inference that a new contract was formed that obliged State Farm to pay for the replacement of Plaintiffs' roof, should it leak at any point in the following five years. As such, even if it is true that the First Hail Storm was the cause of the damage, summary judgment would not be proper.

#### 2. *Existence of a Contract*

Under Ohio law, only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract. *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161, 566 N.E.2d 1220, 1223 (Ohio 1991), *citing Visintine & Co. v. New York, C. & St. L.R.*

*Co.*, 169 Ohio St. 505, 160 N.E.2d 311 (Ohio 1959). Herein, Plaintiffs offer three alternative arguments as to Defendant's contractual liability. *First,* they allege that they were third-party beneficiaries of the Insurance Contract between State Farm and Maddux. *Second,* they argue that Defendant should be estopped from denying coverage to them under the Insurance Contract. *Third,* they argue that a new contract was created between themselves and Defendant. Each argument will be addressed in turn.

#### a. *Intended Beneficiary*

 Plaintiffs concede that they were never insureds under the Insurance Contract (Doc. # 13 at 9), meaning that it is undisputed that the Insurance Contract, on its four corners, did not intend for Plaintiffs to be third-party beneficiaries. As such, in order for it to be the case that Plaintiffs were third-party beneficiaries to the contract, Plaintiffs would need evidence that the original parties to the contract (i.e., State Farm and Maddux) intended to amend it to include Plaintiffs as third-party beneficiaries. Of course, this would include the requisite contractual elements, including, especially, consideration. Even if one were to infer from Sulish's statement an intent to confer a benefit to a third party, Plaintiffs offer no argument, let alone evidence, as to what consideration existed for this amendment to Defendant's Insurance Contract with Maddux, and the Court is not inclined to speculate. As such, the argument that Plaintiffs were third-party beneficiaries to the contract is unavailing.

#### b. *Estoppel*

 Plaintiffs' second argument is that State Farm should be estopped from denying coverage under the Insurance Contract because of their detrimental reliance on

Sulish's promise to replace the roof if it were to leak within the next five years. Pursuant to the rule of estoppel, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 104, 483 N.E.2d 150, 154 (Ohio 1985), *quoting Talley v. Teamsters Local No.*, 377, 48 Ohio St.2d 142, 146, 357 N.E.2d 44 (Ohio 1976), *citing* Restatement (Second) of Contracts § 90 (1973).

The crucial issue is whether Plaintiffs actually relied to their detriment, and whether any such reliance was reasonable. Lisa Schreiber testified in her deposition that she and Pogue had lingering concerns about the condition of the roof, and they relied upon Sulish's statement in deciding to go through with the purchase of the House. Specifically, she stated that "[Sulish's] statement was critical for me to purchase this house. If I didn't have that from an insurance company, the deal was off, absolutely, and Monika and I talked about that, this is off" (Lisa Schreiber Depo. at 167). Further, in the Affidavit of Lisa Schreiber, she swore that "[t]he only reason that we closed on the purchase of this home was the promise made by Jason Sulish" (Doc. # 13, Ex. 1, ¶ 15).

Defendant's argument is essentially that any such was reliance was not reasonable. As Defendant notes, instead of walking away from the entire transaction because of concerns regarding the leaking roof, Plaintiffs executed the Reimbursement Agreement with Maddux, which ensured that if State Farm did not pay for the repairs to the roof, Maddux would pay for them herself (Doc. # 11 at 7–8, *citing* Lisa Schreiber Depo. at 249). As such, Defendant argues that "[t]he Reimbursement Agreement demonstrates that, from beginning to end, Lisa Schreiber and Moni[k]a Pogue were not relying on State Farm" (Doc. # 15 at 6).

■ However, this misstates the chronology of events. At her deposition, Lisa Schreiber testified that she did not see or know of the Reimbursement Agreement for the first time until the day of the closing, at which time her lawyer presented it to her and advised her to sign it (Lisa Schreiber Depo. at 256). This fact subverts Defendant's claim that Plaintiffs' decision to close on the House was made in reliance on the Reimbursement Agreement (and defeats altogether the claim that Plaintiffs relied on the Reimbursement Agreement "from beginning to end") because it suggests that Plaintiffs were not even aware, until the very day of the closing, of an arrangement by which Maddux would pay for future repairs to the House. This entitles Plaintiffs to the an inference that they did, in fact, reasonably rely on Sulish's promise to replace the roof, should it leak within five years.

■ On the other hand, even assuming reasonable reliance, Defendant, citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 597 N.E.2d 1096 (Ohio 1992), argues that estoppel cannot be used to expand insurance coverage (Doc. # 15 at 5). It reasons that such would be inappropriate because "Lisa Schreiber and Moni[k]a Pogue did not go through an underwriting process with State Farm. State Farm did not undertake to insure any risk with Lisa Schreiber and Moni[k]a Pogue, and did not collect any premium from them" (*Id.*). However, Defendant misapplies the rationale of that decision. Defendant seems to assume that the estoppel argument arises in the context of Maddux's policy, hence its belief that Plaintiffs seek to use estoppel "to expand insurance coverage." However, since Plaintiffs' es-

toppel claim, based as it is on Sulish's statement on June 28, is independent of any rights under Maddux's insurance policy, Defendant's reliance on the proposition that failure to go through the underwriting process precludes contractual liability is misplaced. Further, the fact that Plaintiffs did not go through the underwriting process with State Farm is immaterial to a claim for promissory estoppel. Adopting the rationale urged by Defendant (that no liability could arise for an insurance company that had not been contracted for in the underwriting process) would lead to the perverse result that representatives of insurance companies would have carte blanche to make promises such as the one Plaintiffs allege was made herein without being subject to liability, as long as the promise was not part of the underwriting process.

As such, summary judgment with respect to Plaintiffs' promissory estoppel claim is improper.

### c. *New Contract*

Plaintiffs also argue that, by virtue of Sulish's alleged statement, a new contract was formed between themselves and State Farm, wherein State Farm promised to replace the roof of the House in the event that it were to leak in the next five years. Defendant believes that no consideration existed for this promise (Doc. # 15 at 6–7). It is apparent, however, that Defendant misunderstands the argument. On one hand, Defendant is correct that no consideration existed in the form of an insurance premium. *Id.*

■ However, this is not dispositive, because "[c]onsideration may consist of either a detriment to the promisee or a benefit to the promisor." *Brads v. First Baptist Church of Germantown,* Ohio 89 Ohio App.3d 328, 336, 624 N.E.2d 737, 743 (Ohio App. 2 Dist.1993), *citing Software Clearing House, Inc. v. Intrak, Inc.,* 66 Ohio App.3d 163, 583 N.E.2d 1056 (Ohio App. 1 Dist.1990). Moreover, "a benefit may consist of some right, interest or profit accruing to the promisor." *Id.*

■ To this end, Plaintiffs insist that, when Sulish made the alleged statement, "he knew that the matter would be closed and State Farm could close its file. The benefit received by the promisor was an economic benefit in the form of being able to close its file on this matter, so that it could not waste resources of funds on an, what it felt was, a claim [sic] that was finally settled" (Doc. # 13 at 11). Therefore, though true that Defendant did not receive the ordinary consideration of an insurance premium, under Plaintiff's theory, it did receive the economic benefit of closing Maddux's file on the House. As Plaintiffs note (Doc. # 13 at 8), allaying their concerns by promising to cover any future loss relating to the roof was beneficial to State Farm because doing so enabled it to close Maddux's file. Once the transaction between Maddux and Plaintiffs to transfer ownership of the House was final, State Farm would no longer have to pay for any claims pertaining to the House under Maddux's policy because, as explained *supra,* Plaintiffs had no rights under Maddux's policy. On the other hand, the longer the final sale of the house was delayed, the greater the risk to State Farm that it would have to pay more claims under the policy.[4]

---

4. Without doubt, it is difficult, if not impossible, to imagine that an insurance company would find this to be a good bargain. To be sure, Plaintiffs' argument regarding consideration posits that the "benefit" obtained by State Farm was the opportunity to insure against the open-ended risk of the roof leaking at any point within the next five years, instead of remaining within the carefully-defined dictates of its policy with Maddux.

Because Plaintiffs have offered viable theories, that are supported by factual inferences, positing promissory estoppel, as well as the formation of a contract between them and State Farm, summary judgment is not proper with respect to Plaintiff's claim for breach of contract.

### B. *Fraudulent Misrepresentation*

 Plaintiffs' fraudulent misrepresentation claim is also based on Sulish's promise that State Farm would replace the roof, if it were to leak within the next five years. Under Ohio law, the elements of fraud are (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169, 462 N.E.2d 407, 409 (Ohio 1984), *quoting Friedland v. Lipman*, 68 Ohio App.2d 255, 429 N.E.2d 456 (Ohio App. 8 Dist.1980).

 Again, Defendant argues that Plaintiffs' choice to enter the Reimbursement Agreement instead of walking away from the transaction does not permit any inference that Plaintiffs reasonably relied on any representation that may have been made by Sulish (Doc. # 11 at 13). For the same reasons noted *supra* in the Court's analysis of Plaintiffs' promissory estoppel claim, Plaintiffs have presented evidence

sufficient for a reasonable jury to find that they reasonably relied on Sulish's statement.

However, Defendant also argues that Plaintiffs' fraud claim fails as a matter of law because "[Sulish's] alleged statement is a statement of a future promise, and cannot form the basis of a fraudulent misrepresentation of present or past fact" (Doc. # 11 at 13). Defendant relies upon the Ohio Supreme Court's decision in *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (Ohio 1991), for the claim that a promise to do something in the future cannot, as a matter of law, be the basis for fraud. This is an incredibly novel theory of fraud, and the *Wing* decision stands for no such proposition. In *Wing*, the court reviewed a case in which the plaintiff sued his former employer, arguing, *inter alia*, that the defendant's alleged promise of future equity participation in the company was made fraudulently to secure his employment for a limited time that was beneficial to the defendant's interest in securing a smooth ownership transition of the company. The plaintiff had argued that, since he was offered a chance at equity participation, but was discharged before that occurred, the offer must have been fraudulent. Having already rejected the plaintiff's argument that the promise of future equity participation was a promise of future employment within the promissory estoppel exception to the rule of employment-at-will, the court rejected this argument too, noting that, in the absence of actual evidence, such an inference was insufficient

---

However, despite the incredulity of this argument, it is well-settled that, "[g]enerally, inadequacy of consideration will not invalidate a contract." *Ervin v. Garner*, 25 Ohio St.2d 231, 239, 267 N.E.2d 769, 774 (Ohio 1971), *citing Judy v. Louderman*, 48 Ohio St. 562, 29 N.E. 181 (Ohio 1891). As such, "courts will

not inquire into the adequacy of consideration, unless the absence of consideration was such as to constitute fraud or unfair treatment." *Mooney v. Green*, 4 Ohio App.3d 175, 177, 446 N.E.2d 1135, 1138 (1982), *citing* 17 Ohio Jurisprudence 3d 512, Contracts, Section 79.

for the plaintiff to prevail on his claim for fraud. As such, the court did *not* hold that promises to undertake a future action cannot, as a matter of law, be the basis for a fraud claim. Instead, it held that, in that particular situation, the plaintiff had presented no evidence supporting his theory of fraud. In contrast, in the case *sub judice*, Plaintiffs' claim is simply that State Farm's as-of-yet refusal to replace the roof demonstrates the falsity of Sulish's promise that State Farm would replace the roof were it to leak within five years.[5] Since this rightly can be the basis for fraud, Defendant's motion for summary judgment as to that claim is overruled.

### C. Bad Faith

■ As Defendant correctly points out (Doc. # 11 at 14), based on the relationship between an insurer and its insured, "an insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315, 1319 (Ohio 1983). Accordingly, "[a] breach of this duty will give rise to a cause of action against the insurer." *Id.*

■ Specifically, "an insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 554, 644 N.E.2d 397, 400 (Ohio 1994). Further, as Defendant notes (Doc. # 11 at 15), a disagreement about the value of a claim does not generate a genuine issue of material fact as to bad faith. *Eagle Am. Ins. Co. v. Frencho*, 111 Ohio App.3d 213, 223, 675

N.E.2d 1312, 1319 (Ohio App. 10 Dist. 1996).

■ Defendant insists that the disagreement between it and Plaintiffs revolved around the value of the claim. This, however, mischaracterizes Plaintiffs' claim. It appears that Plaintiffs believe that Defendant's refusal to honor Sulish's promise to replace the roof in the event of a leak constitutes bad faith. Due to the fact that, as explained *supra*, Defendant discounts the possibility that Sulish's statement created liability on the part of State Farm independently of Maddux's policy, its arguments pertaining to bad faith seem to apply only to its actions pursuant to settling the claims under that policy. Because of this, it has failed to meet its burden under Rule 56 to set forth evidence in the record that, it believes, demonstrates the absence of a genuine issue of material fact. Specifically, Defendant would need to present evidence in the record sufficient that no reasonable jury could conclude that its failure to replace the roof was not predicated on a reasonable justification. Having failed to do so, summary judgment with respect to Plaintiffs' claim for bad faith is improper.

### D. Punitive Damages

■ Plaintiffs also seek punitive damages, pursuant to their claim for bad faith. Punitive damages are available to prevailing plaintiffs in bad faith actions where the defendant has acted with actual malice. *Hoskins, supra.* Actual malice is "that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation, or a determination to vent his feelings upon other per-

---

5. Further, although not argued by Defendant, the other elements of fraud appear to be present for the purposes of ruling on Defendant's motion for summary judgment. Specifically, the statement was material to the transaction at hand, in that it pertained to a risk of loss concerning the House. Additionally, State Farm's statement would be the proximate cause of Plaintiffs' expenses incurred in fixing the roof under their theory of fraud.

sons." *Pickle v. Swinehart,* 170 Ohio St. 441, 443, 166 N.E.2d 227, 229 (Ohio 1960) (citations omitted).

Defendant asks the Court to enter summary judgment as to punitive damages, yet offers only the conclusory statement that "[t]here is no evidence of actual malice, but rather the evidence shows a prompt and thorough investigation of Jannice Maddux's claim" (Doc. # 11 at 16). Not only does Defendant not offer any support in the record (thereby failing to meet its burden on a motion for summary judgment), but it again mischaracterizes Plaintiffs' claim as rooted solely in the rights under Maddux's policy. As noted *supra,* the Court does not understand that to be the basis for Plaintiffs' claim. Accordingly, summary judgment is not proper on the issue of punitive damages.

For the reasons explained herein, Defendant's Motion for Summary Judgment (Doc. # 11) is overruled in its entirety. All of Plaintiffs' claims remain, with the caveat that the breach of contract claim may not go forward on the theory that Plaintiffs were intended beneficiaries of Maddux's Insurance Contract.